OPINION
RILEY, Judge.

STATEMENT OF THE CASE

Appellant-Respondent, Brooke Neuhoff (Mother), appeals the trial court’s Order *755 awarding visitation with her minor child to the paternal grandparents, Appellees-Peti-tioners, Scott A. Ubelhor (Grandfather) and Angela S. Ubelhor (Grandmother) (collectively, Grandparents).
We reverse.

ISSUE

Mother raises one issue on appeal, which we restate as: Whether the trial court erred in granting Grandparents’ Petition for Grandparent Visitation (Petition).

FACTS AND PROCEDURAL HISTORY

During her junior year of high school, Mother learned that she and her nineteen-year-old boyfriend, Justin Ubelhor (Father), were expecting a baby. Just eleven weeks before Mother gave birth, Father committed suicide. On June 8, 2010, by agreement between Mother and Grandparents, the trial court entered an order establishing Father’s paternity, and on June 17, 2010, Mother gave birth to a son, C.N. (the Child). Because Mother was only seventeen years old when the Child was born, her parents (Maternal Grandparents) were appointed as the Child’s guardians.[1] Mother and the Child live in Maternal Grandparents’ home in Huntingburg, Indiana.
In August of 2010, Mother returned to school for her senior year, and the Child was enrolled in daycare. Mother continued her participation in extracurricular activities and graduated from high school with a grade point average of 3.9 on a 4.0 scale. Thereafter, she enrolled in the University of Southern Indiana to study accounting. In addition to being a full-time college student, Mother works for the accounting department of a large remanufac-turing company.
Following Father’s death, Mother maintained a close relationship with Grandparents. Grandmother hosted a baby shower for Mother, and she was present during the Child’s delivery. For nearly the first three years of the Child’s life, Mother made sure Grandparents were involved in the Child’s baptism, birthday parties, holidays, and other celebrations. Likewise, Grandparents invited Mother to attend their family events. In addition to the special occasions, Mother took the Child for visits at Grandparents’ house almost every Sunday. Although Mother stayed with the Child during the first few months of his life, as he became older, she would sometimes leave for several hours so that she could do homework, and Grandparents could enjoy their own time with the Child. The Child never spent the night with Grandparents.
Sometime in January of 2013, Grandmother heard a rumor that Mother intended to terminate Grandparents’ contact with the Child because Mother believed that Grandparents “were low-life people[ ]” and “bad influences” who did not “deserve to be around [the Child].” (Transcript p. 16). When confronted by Grandmother, Mother denied ever making such statements and informed Grandmother that she “would never do that to [Grandparents].” (Tr. p. 16). Unwilling to risk the chance that Mother might keep the Child away from them,, and because they wanted to have overnight visits with the Child, Grandparents filed their Petition on February 22, 2013. For the next several weeks, despite Grandparents’ legal action, Mother continued to take the Child for his Sunday visits with Grandparents.
Around this same time, Mother began to notice changes in the Child’s behavior following his visits with Grandparents, specifically that the Child was crying more, act *756 ing out, and being aggressive. The Child’s last visit with Grandparents occurred on Sunday, March 17, 2013. When Mother picked the Child up from Grandparents’ house that afternoon, she became concerned by the Child’s atypical behavior. Mother explained that the Child
was crying and hitting and just terrified .... He cried for an hour and a half straight. He wanted no one to touch him [and][w]anted nothing to do with anyone else. And then I ... I started praying, and finally, he came up, and he said, mama, hold me. And he was shaking and shivering and just seemed really scared.
(Tr. pp. 67-68 (last alteration in original)). The next day, the Child had multiple potty-training accidents at daycare, which was highly unusual for him, and that night, Mother noticed that the Child had several bruises on his back. At this point, Mother decided to discontinue the Child’s visitation with Grandparents. As a result, on April 12, 2013, Grandparents filed an Emergency Petition for Grandparent Visitation, alleging that Mother had retaliated against their Petition by denying them “all contact with [the Child] despite a previous parenting time routine and relationship prior to the filing of this case.” (Appellant’s App. p. 14). The trial court denied Grandparents’ Emergency Petition.
On August 15, 2013, the trial court conducted an evidentiary hearing on Grandparents’ Petition. On October 8, 2013, the trial court issued its Order granting visitation rights to Grandparents. In its findings of fact and conclusions thereon, the trial court concluded that “[i]t is in [the Child’s] best interest that he visit with [Grandparents].” (Appellant’s App. p. 9). The trial court specified that, following a six-week transition period consisting of both supervised and unsupervised visits, Grandparents are entitled to unsupervised visitation time with the Child on alternating Sundays from 10:00AM to 6:00PM. On November 9, 2013, Mother filed a motion to stay the visitation Order pending the outcome on appeal, which the trial court denied on December 10, 2013.
Mother appealed, and on April 4, 2014, our court issued a memorandum decision, wherein we found that the trial court had failed to issue proper findings of fact and conclusions of law. See In re Grandparent Visitation of C.S.N., No. 19A051311MI 542, 2014 WL 1356851 (Ind.Ct.App. Apr. 4, 2014). We retained jurisdiction, stayed the visitation, and instructed the trial court to remit new findings and conclusions within thirty days. On April 25, 2014, the trial court issued its Revised Order.

DISCUSSION AND DECISION

I. Standard of Review
In either granting or denying a petition for grandparent visitation, the trial court is obligated to issue specific findings and conclusions in its decree. Ind.Code § 31-17-5-6. Accordingly, we apply the two-tiered standard of review set forth in Indiana Trial Rule 52(A). First, we must consider whether the evidence supports the findings; second, we determine whether those findings support the judgment. In re Visitation of M.L.B., 983 N.E.2d 583, 585 (Ind.2013). We do not reweigh evidence or assess the credibility of witnesses, and we consider the evidence and all reasonable inferences in favor of the trial court’s judgment. Megyese v. Woods, 808 N.E.2d 1208, 1213 (Ind.Ct.App.2004). We will “not set aside the findings or judgment unless clearly erroneous.” Ind. Trial Rule 52(A). Regarding the factual findings, we “defer[ ] to the trial court’s superior opportunity ‘to judge the credibility of the witnesses.’ ” In re Visitation of M.L.B., 983 N.E.2d at 585 (quoting K.I. ex rel. J.I. v. J.H., 903 N.E.2d 453, 457 (Ind.2009)). We *757 will find the judgment to be clearly erroneous if “the findings fail to support the judgment” or if “the trial court applies the wrong legal standard to properly found facts.” Id.
II. Grandparent Visitation Act
The “interest of parents in the care, custody, and control of their children [ ] is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court.” Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). As such, the Fourteenth Amendment “provides heightened protection against government interference” in the right of parents “to direct the upbringing of their children.” Id. In contrast, because “grandparents do not have the legal rights or obligations of parents,” they “do not possess a constitutional liberty interest in visitation with their grandchildren.” McCune v. Frey, 788 N.E.2d 752, 755 (Ind.Ct.App.2003). Rather, decisions about the level of grandparent involvement in the lives of their grandchildren have historically been a matter of parental discretion. In re Visitation of M.L.B., 983 N.E.2d at 585.
Nevertheless, states have recognized “that children should have the opportunity to benefit from relationships with statutorily specified persons — for example, their grandparents.” Troxel, 530 U.S. at 64, 120 S.Ct. 2054. As a result, the Indiana General Assembly enacted the Grandparent Visitation Act, which provides that there are limited circumstances under which “[a] child’s grandparent may seek visitation rights.” I.C. § 31-17-5-1. In the present case, Grandparents were entitled to file their Petition because Father is deceased, as well as because the Child was born out of wedlock and Father’s paternity was established. See I.C. § 31-17-5-1.
A trial court may grant grandparent visitation rights upon a determination that it would be “in the best interests of the child.” I.C. § 31-17-5-2(a). In its evaluation of a child’s best interests, a trial court “may consider whether a grandparent has had or has attempted to have meaningful contact with the child.” I.C. § 31-17-5-2. However, this consideration “is not the touchstone for determining the child’s best interests.” In re Visitation of C.L.H., 908 N.E.2d 320, 328 (Ind.Ct.App.2009). Because “a child’s best interests do not necessarily override” the “fundamental constitutional right” of natural parents “to direct their children’s upbringing without undue governmental interference,” our courts have endeavored to “strik[e] a balance between parental rights and children’s interests.” In re Visitation of M.L.B., 983 N.E.2d at 586. To this end, our court has identified four factors that a trial court must consider in its decree granting or denying an award of grandparent visitation:
(1) the presumption that a fit parent acts in his or her child’s best interests;
(2) the special weight that must be given to a fit parent’s decision to deny or limit visitation;
(3) whether the grandparent has established that visitation is in the child’s best interests; and
(4) whether the parent has denied visitation or has simply limited visitation,
McCune, 783 N.E.2d at 757. It was the trial court’s failure to address all four of these “McCune Factors” — as they have come to be recognized — in its original Order that necessitated our remand and clarification. See In re Visitation of M.L.B., 983 N.E.2d at 586. Having received the trial court’s revised findings and conclusions, we now address Mother’s claim that, in light of her constitutional rights as a fit *758 parent, the trial court clearly erred in granting Grandparents’ Petition.
A. Fit Parent: Presumption and Special Weight
 In evaluating the first and second McCune Factors, the trial court found, and Grandparents concede, that Mother is a fit parent. Thus, the trial court acknowledged its obligation to presume that Mother acted in the Child’s best interests in deciding to discontinue the Child’s visits with Grandparents. In re Visitation of C.L.H., 908 N.E.2d at 328. “Acting under this presumption, courts must give special weight to a parent’s decision to deny or limit visitation.” Id. However, the presumption favoring the parent is a rebutta-ble one. Hicks v. Larson, 884 N.E.2d 869, 874 (Ind.Ct.App.2008), trans. denied. “Grandparents bear the burden of rebutting the presumption that [Mother’s] decision to deny visitation was made in [the Child’s] best interests.” Id. at 874-75.
Here, the trial court concluded that Grandparents “have overcome the presumption that [Mother], as a fit parent, acted in the Child’s best interest when terminating visitation on March 17, 2013, and by refusing to reinstate visitation during the period March 17, 2013[,] down to and inclusive of August 15, 2013.” (Revised Order p. 10). Mother and Grandparents now disagree about whether Grandparents presented sufficient evidence to overcome “the significant burden of proof grandparents must carry to override [parental] decisions.” In re Visitation of M.L.B., 983 N.E.2d at 587. Mother asserts that the trial court inappropriately “inserted itself into the decision-making as to [the Child’s] best interests, despite there being no reason to second guess [her] decisions.” (Appellant’s Br. p. 15). Conversely, Grandparents argue that Mother is merely “seeking to have the evidence reweighed and considered in a light most favorable to her.” (Appellees’ Br. p. 12). Because the trial court awarded Grandparents less visitation time than they had under their prior routine, Grandparents further contend that Mother “can hardly claim that the trial court is unduly interfering in her fundamental right to [direct the Child’s] upbringing.” (Appel-lees’ Br. p. 14).
During the trial, Mother cited several reasons in support of her decision to cease the Child’s visits with Grandparents. In addition to the Child’s worrisome behavior following his last visit with Grandparents, Mother’s other concerns included: Grandfather’s prior convictions for manufacturing methamphetamine and for domestic battery against Grandmother; Grandparents’ exhibitions of aggression and hostility, such as Grandfather’s physical altercations with Father and Grandmother’s screaming match with a stranger in front of the Child; Grandparents’ use of prescription drugs; and the unrelated individuals whom Grandmother had permitted to temporarily reside in the house despite their illicit drug use. While Mother’s decision must be accorded special weight, the trial court is under no obligation to accept Mother’s proffered explanation for restricting or denying the visitation “as necessarily true.” Hicks, 884 N.E.2d at 875. Instead, the trial court is charged with hearing and weighing the evidence and determining whether Mother’s justification for terminating Grandparents’ visitation is valid. Id.
Contemplating Mother’s proffered reasons, the trial court “place[d] little, if any, weight” on Grandfather’s convictions because they “were more than twelve and thirteen years old by the time of trial.” (Rev. Order pp. 7-8). The trial court also found that Grandparents “have a good relationship”; it is no longer possible for any *759 conflicts to occur betweeh Grandfather and Father; Grandparents are prescribed medications for diagnosed medical conditions and follow their physicians’ instructions; and “[t]he transient individuals have left the home.” (Rev. Order p. 8). Additionally, because Mother had “full knowledge of all [of these] facts/evehts” at “the time she approved of, promoted and even fostered the healthy and meaningful relationship” between the Child and Grandparents, the trial court gave little credence to Mother’s reasons for ceasing visitation. (Rev. Order p. 9). With respect to the Child’s concerning behavior, the trial court found, in part:
28. Despite [Mother’s] concerns, no evidence was produced that [the Child] was injured at [Grandparents’] home, no evidence was produced that [the Child’s] unusual behavior or accidents at day care were the result of events that had occurred during grandparent visitation, and no evidence was produced identifying the source of the bruises resembling fingerprints discovered the following Monday while bathing [the Child] after attending day care. A police report was not filed. [The Department of Child Services] was not called. [Mother] did not inquire of [Grandparents] if [the Child] ha4 been injured at their home.
[[Image here]]
38. Both experts, the [guardian ad li-tem] and [Mother’s] therapist, Alice Berger [ (Berger) ], testified that there was no information indicating that [the Child] would not be safe with [Grandparents].
39. [Mother] did not discuss [the Child’s] unusual conduct with [Grandparents] to determine if something had happened during visitation on March 17, 2013[,] that was responsible for the conduct. [Mother] assumed that something had happened and as a result terminated visitation. [Mother’s] decision was based, in part, on speculation.
:[: * * ⅜
49. [Berger’s] testimony that “something happened to change the [C]hild’s behavior” cannot be attributed to [Grandparents]. [Berger] did not identify a reason for the change in behavior. Attributing the change to [Grandparents] is without a factual basis and is based on conjecture.
(Rev. Order pp. 6, 9,11).
We are mindful of the deference to be accorded to the trial court regarding the weight of the evidence and assessment of witness credibility. However, by citing Mother’s failure to prove misconduct by Grandparents, the trial court improperly shifted the burden to Mother to establish that she acted in accordance with the Child’s best interests. Furthermore, we find that the failure of the trial court to mention certain evidence in its findings “shakes our confidence that it actually afforded [Mother] the presumption” and found that Grandparents presented sufficient evidence to overcome it. Ramsey v. Ramsey, 863 N.E.2d 1232, 1239 (Ind.Ct.App.2007).
First, with the exception of an out-of-context statement by Mother’s therapist, Berger, that there is no reason to believe the Child would be in danger at Grandparents’ house, the trial court omits from its findings the remainder of Berger’s opinion. Berger testified that Mother noticed a change in the Child’s behavior surrounding the date that Grandparents filed the Petition, explaining Mother’s concern that the Child cried more and acted aggressively *760 following visits with Grandparents. Berger agreed that she did not see any safety problems with the recommendation of the guardian ad litem but noted that she had never met Grandparents. Because of Grandfather’s past domestic violence, Berger recommended supervised visits in order to see the interaction between Grandparents and the Child. Berger also stated that Mother never accused Grandparents of mistreating the Child; rather, “[Mother and Maternal Grandmother] noticed what [the Child] was saying to them about [Grandparents], and he was also having some difficulty after he left with his behavior. Things he said. And also having loose stools, etcetera.” (Tr. p. 134). Because Mother had explained that visitation had always gone very well, but then “suddenly it didn’t[,]” Berger was concerned that something had interfered to cause such a change in the Child’s behavior. (Tr. p. 134). As a result, Berger told Mother that, “until she got to the bottom of it, it might be a good idea” to stop visitation during the pendency of the case. (Tr. p. 136). Therefore, regardless of whether the evidence proves that Grandparents were responsible for the Child’s behavior, the undisputed evidence establishes that Mother’s decision to stop the visitation was based on a rational concern and was made after consulting with her therapist.
Second, the trial court’s findings do not reflect a consideration of the reasons proffered by Grandparents for filing the Petition. During the trial, Grandparents stated that a primary motivator for filing the Petition was to secure overnight visits with the Child. According to Grandfather,
We ... told [Mother], you know, that we filed [the Petition], We didn’t want the papers just coming through the mail and be a surprise. And, you know, we told her we didn’t want no arguments. We didn’t want a fight. We didn’t want to drag this stuff out like this. We just wanted to keep him overnight.
(Tr. p. 84). Grandmother expressed a similar sentiment in the following colloquy at trial:
Q. You have testified that you’ve been involved in all of these "events. [Mother] would bring [the Child] to your house on Sundays. And even with all of that, you petitioned for grandparent visitation, correct?
A. Yes.
Q. Because you want more time than that?
A. Yeah, we want overnight stays with him.
Q. And that’s the reason why you petitioned for the grandparents’ visitation?
A. That is the reason, and ... they kept cutting our time shorter with him. There was never a set time.
(Tr. p. 34). Our court has previously found that grandparents are not automatically entitled to “to have the type of visitation they want.” Swartz v. Swartz, 720 N.E.2d 1219, 1222-23 (Ind.Ct.App.1999). Here, although the trial court did not address this evidence, it is apparent that Grandparents filed their Petition, in significant part, to override Mother’s parental decision-making regarding overnight visits.
Grandmother also testified that one month before filing the Petition, she heard a rumor from a friend (who had learned it from someone else) that Mother intended to sever Grandparents’ ties with the Child. The trial court found that
[Mother] denied the statements and told [Grandmother] that she would never do that (even though she had been progressively reducing the amount of time [Grandparents] spent with [the Child]). [Mother] was informed that [Grandpar *761 ents] had consulted with an attorney for their protection. [Mother] and [Maternal Grandparents] were invited to sit down and discuss the issues but they would never speak about it. The instant litigation ensued following this conversation and invitation.
(Rev. Order p. 5). We first note that Grandmother actually testified that she invited Mother and Maternal Grandmother “to sit down and discuss this matter” after she and Grandfather had filed the Petition. (Tr. p. 17). Despite its condemnation of Mother’s decision to terminate visitation “based, in part, on speculation!,]” the trial court validated Grandparents’ decision to sue for visitation rights based on an unverified, distant rumor and speculation that Mother might decrease their visits with the Child. (Rev. Order p. 9). As we have repeatedly held, courts cannot “infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a ‘better’ decision could be made.” Crafton v. Gibson, 752 N.E.2d 78, 96 (Ind.Ct.App.2001) (quoting Troxel, 530 U.S. at 72-73, 120 S.Ct. 2054).
Finally, noticeably absent from the trial court’s findings is a consideration of the fact that, by filing a lawsuit against Mother, Grandparents contributed to the parties’ discord and certainly did nothing to make Mother feel more comfortable about leaving the Child alone in their care. See In re Visitation of C.L.H., 908 N.E.2d at 329. The undisputed evidence reveals that Mother and Grandparents alike sensed the tension and hostility resulting from the inexplicable decline of their relationship. Nonetheless, Mother continued to drive the Child to Grandparents’ house every Sunday, even for several weeks after Grandparents filed for visitation rights. Acknowledging that the Child exhibited concerning behavior following his last visit with Grandparents, the trial court found Mother’s decision to cease visitation was unreasonable because she “assumed” that Grandparents were the cause without undertaking to investigate the actual reason. (Rev. Order p. 12). In light of Grandparents’ significant burden to prove Mother’s decision was contrary to the Child’s best interests, along with the hostile environment, the correlation of the Child’s unusual behaviors with visitation days, and the lawsuit, we find the trial court clearly erred as its findings do not indicate that it considered the totality of the circumstances in determining that Mother’s decision to restrict visitation was unreasonable.
B. Denial or Limitation of Visitation
Regarding its analysis of the fourth McCune Factor, the trial court concluded that Mother had “unreasonably denied visitation on March 17, 2013, and that the denial continued through the trial date on August 15, 2013.” (Rev. Order p. 12). According to Mother, “the record is uncon-troverted that [she] had involved [Grandparents] in [the Child’s] life since his birth without any court order, and that she expressed every intention of doing so going forward.” (Appellant’s Br. p. 17). Conceding that Mother involved them in the Child’s life for nearly three years, Grandparents assert that when their relationship with Mother began deteriorating near the end of 2012, their “[visitation times kept getting cut shorter and shorter.” (Appel-lees’ Br. p. 13).
Pursuant to McCune, the trial court must “give some weight to the fact that a parent has agreed to some visitation.” Megyese, 808 N.E.2d at 1213. This factor is significant because “once a parent agrees to some visitation, the dispute is no longer over whether the grandparent will have any access to the child, but instead over how often and how much visitation will occur.” Crafton, 752 N.E.2d at 97. *762 Where a parent has denied all visitation, the grandparent must “pursu[e] the right to have a relationship with the child.” Id. Thus, “the case for judicial intervention” is strengthened. In re Visitation of M.L.B., 983 N.E.2d at 587. However, where there is merely a “disagreement between parent and grandparent over how much access is appropriate[,]” judicial intervention is more likely to infringe upon the parent’s fundamental right. Id.; Crafton, 752 N.E.2d at 97.
In this case, we find it clear that the trial court accorded no weight to the fact that Mother permitted Grandparents to have regular contact with the Child for the first three years of his life and did not suspend the visitation until three weeks after Grandparents filed the Petition. The trial court found that Mother’s denial was unreasonable in light of a previous “routine [that] involved weekly visits at a minimum”; yet, the trial court failed to credit Mother for the fact that she initiated and maintained that weekly visitation regime without the court compelling her to do so. (Rev. Order p. 12). See In re Visitation of M.L.B., 983 N.E.2d at 587. Even during the trial, Mother did not argue that Grandparents should be denied all visitation; instead, she asserted her preference that visitation occur once per month, for four to six hours, with no overnight stays and with supervision.
As we have stated, there is a significant difference in situations where a grandparent’s visitation has been merely reduced versus denied entirely. Here, where the dispute “is not whether [the Child] and [Grandparents] will have a relationship but on whose terms it will be, there is no need for court intervention into [Mother’s] decisions as a fit parent.” (Appellant’s Br. p. 17). Accordingly, the trial court’s finding that Mother denied all contact between the Child and Grandparents is clearly erroneous based on the substantial evidence that Mother did not restrict Grandparents’ visitation privileges until after they had filed the Petition. Furthermore, even considering that Mother terminated all visitation between the filing of the Petition and the trial, the trial court erred by conferring no weight to Mother’s acknowledgment that the Child should continue to have a relationship with Grandparents.[2] The trial court’s Order/Revised Order awarding visitation to Grandparents is hereby vacated, and Mother’s discretion to determine the level of Grandparents’ visitation in accordance with her parental rights and the Child’s best interests is restored.

CONCLUSION

Based on the foregoing, we conclude that the trial court clearly erred by awarding visitation to Grandparents.
Reversed.
MAY, J. concurs.
VAIDIK, C.J. dissents with separate opinion.

. Maternal Grandparents’ guardianship over the Child was terminated on August 20, 2013.

. We do not address the third McCune Factor regarding the Child's best interests because Mother does not dispute that it is in the Child’s best interests to have a relationship and spend time with Grandparents. Rather, it is Mother’s position that she — not Grandparents — has the constitutional right to establish the parameters of the visitation.