# FOR PUBLICATION



FILED

Nov 24 2014, 9:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MATTHEW J. MCGOVERN**
Anderson, Indiana

ATTORNEYS FOR APPELLEES:

**TRISHA S. DUDLO**
**KELLY A. LONNBERG**
Bamberger, Foreman, Oswald and Hahn, LLP
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE VISITATION OF H.B., | ) | |
| | ) | |
| ADAM BURRIS, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 87A04-1406-MI-263 |
| | ) | |
| TIMOTHY W. SCHMIDT and ANITA J. SCHMIDT, | ) | |
| | ) | |
| Appellees-Petitioners. | ) | |

APPEAL FROM THE WARRICK SUPERIOR COURT
The Honorable Robert R. Aylsworth, Judge
Cause No. 87D02-1307-MI-854

**November 24, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Adam Burris ("Father") appeals the trial court's grandparent visitation order in favor of Timothy W. Schmidt and Anita J. Schmidt ("the Grandparents") and with respect to Burris' minor daughter, H.B. Father raises two issues for our review, which we consolidate and restate as whether the trial court's order is clearly erroneous. We reverse.

## FACTS AND PROCEDURAL HISTORY

We stated the relevant facts in a prior appeal:

> H.B. was born in June 2008 to Father and K.M. ("Mother"). Father and Mother were not married. Mother and H.B. have occasionally lived with [Mother's] parents, Grandparents. Although Mother initially had custody of H.B., an Illinois court modified that custody in March 2012 due to Mother's alcohol abuse and instability. Father was awarded sole custody of H.B., and Mother was awarded visitation. In August 2012, Mother's visitation was modified to visitation on the first, second, and third Sundays of each month from 3:00 p.m. to 5:00 p.m. at a restaurant with visitation to be supervised by Father or his parents. Grandparents visited with H.B. once a month during Mother's supervised visitation. Grandparents also attended H.B.'s sporting events, and Father allowed H.B. to attend a picnic and a birthday party with Grandparents.

A.B. v. T.S. (In re H.B.), No. 87A01-1309-MI-415, 11 N.E.3d 573, at *1 (Ind. Ct. App. May 9, 2014).

In July of 2013, the Grandparents filed a petition for grandparent visitation pursuant to Indiana Code Chapter 31-17-5. After a hearing, the trial court granted the Grandparents' petition. Father appealed, and we remanded to the trial court with instructions that the court enter an order that expressly met certain requirements enumerated by the Indiana Supreme Court in K.J.R. v. M.A.B. (In re M.L.B.), 983 N.E.2d 583 (Ind. 2013).

2

Following our instructions, on remand the trial court entered the following findings of fact:

2.     [H.B.] and [M]other lived with the [Grandparents] for approximately two and one[-]half years after [H.B.] was born.

3.     Pursuant to the Illinois order determining the rights of the parties, the [Grandparents'] daughter, [Mother], receives only six hours of contact with [H.B.] at a McDonald[']s] restaurant on the West side of Evansville, two hours at a time and on three Sundays per month.  The [G]randparents previously attended one two[-]hour period per month.

4.     [F]ather allowed no time to the [G]randparents for them to visit with [H.B.] outside of his supervision and control and, without the coercive intervention of the court, there will be no other time allowed by [F]ather to the [G]randparents.

5.      . . . The [Grandparents'] son Chad . . . resides in Evansville.  The[ir] family often congregates at the family farm [there] where [H.B.] stays with her [G]randparents during the one weekend per month they are permitted to have her.

6.     The [G]randparents' right to exercise this limited parenting time with [H.B.] is conditional upon them not permitting the [M]other . . . to have any personal contact with [H.B.] while she is with them.

7.     The [G]randparents' contact with [H.B.] by phone has been limited, and permitting them one phone call per week is a minimal intrusion upon [F]ather, reasonable[,] and in [H.B.'s] best interest.

8.     The [G]randparents assuming the burden for transportation to and from their home in Illinois results in very little inconvenience and virtually no expense to [F]ather for the [Grandparents] to exercise their grandparent visitation with their granddaughter.

9.     [F]ather's main expressed concern is that [M]other shall have contact with [H.B.] other than that permitted by the order of the Illinois court.  The court's order to the [Grandparents] forbidding any personal contact by [Mother] with [H.B.] while she is in her grandparents' temporary custody resolves and satisfies [F]ather's main stated concern with the [Grandparents] having [H.B.] for grandparent visitation.

10. The law presumes that a fit parent's decision about grandparent visitation is in the child's best interest. <u>That presumption in this case is overcome by</u> evidence of the close personal relationship between [H.B.] and the [Grandparents], and <u>the fact that they will receive no grandparent visitation with her if the matter is left in [F]ather's control</u>.

11. The law further states that "special weight" must be given to a fit parent's decision regarding non[-]parental visitation. The court has considered this factor, but <u>[the court] finds the evidence overcomes and rebuts the presumption that [F]ather should have total control over this matter[] when [M]other is permitted no unsupervised parenting time by the Illinois court's order, and [F]ather will permit no unsupervised visitation to the [G]randparents absent the order of this court</u>.

12. The evidence presented to the court shows that [H.B.] lived with the [Grandparents] for an extended period of time following her birth and has a close, personal relationship with [the Grandparents and their family] that regularly congregates at the [family] farm on the weekends . . . .

13. The court finds nothing in the record suggests anything otherwise than that allowing the [Grandparents] temporary and limited contact with [H.B.] is in the child's best interest, and that a denial of temporary, limited contact by [the Grandparents] is clearly contrary to the child's best interest.

14. . . . [I]f and when [M]other's parenting time is restored to her, this may affect the extent of the [G]randparents' visitation with [H.B.]

15. <u>The entry of this order assures that [H.B.] may maintain some regular contact with [M]other's family, and they with her. Otherwise, the evidence supports a finding there will be none</u>.

Appellant's Supp. App. at 8-11 (emphases added). The court then ordered Father to permit the Grandparents visitation the second weekend of each month, starting at 6 p.m. on Fridays and ending at 3 p.m. on Sundays. The court further ordered Father to permit the Grandparents visitation for two overnights between December 26 and December 31 and one five-day period during H.B.'s summer break. And the court instructed Father to permit the Grandparents to "call [H.B.] at least one time per week at reasonable times and for reasonable times." Id. at 14.

4

## DISCUSSION AND DECISION

Father appeals the trial court's order on grandparent visitation. As our supreme court has explained:

> Because the Grandparent Visitation Act requires specific findings of fact and conclusions of law, Ind. Code § 31-17-5-6, we apply the two-tiered Indiana Trial Rule 52 standard of review, Megyese v. Woods, 808 N.E.2d 1208, 1213 (Ind. Ct. App. 2004). We first determine whether the evidence supports the findings, and then whether the findings support the judgment, In re K.I., 903 N.E.2d 453, 457 (Ind. 2009). We set aside findings of fact only if they are "clearly erroneous," deferring to the trial court's superior opportunity "to judge the credibility of the witnesses." K.I., 903 N.E.2d at 457, quoting T.R. 52(A). In turn, "[a] judgment is clearly erroneous when . . . the findings fail to support the judgment," or "when the trial court applies the wrong legal standard to properly found facts." K.I., 903 N.E.2d at 457, citing Fraley v. Minger, 829 N.E.2d 476, 482 (Ind. 2005).

In re M.L.B., 983 N.E.2d at 585.

Grandparent visitation must be balanced with the fact that the "natural parents have a fundamental constitutional right to direct their children's upbringing without undue governmental interference," and "a child's best interests do not necessarily override that parental right." Id. at 586. To protect this fundamental right, our supreme court has mandated that a trial court's order on grandparent visitation must address the following four factors:

> (1) a presumption that a fit parent's decision about grandparent visitation is in the child's best interests (thus placing the burden of proof on the petitioning grandparents);
>
> (2) the "special weight" that must therefore be given to a fit parent's decision regarding nonparental visitation (thus establishing a heightened standard of proof by which a grandparent must rebut the presumption);
>
> (3) "some weight" given to whether a parent has agreed to some visitation or denied it entirely (since a denial means the very existence of a child-

5

grandparent relationship is at stake, while the question otherwise is merely how much visitation is appropriate); and

(4) whether the petitioning grandparent has established that visitation is in the child's best interests.

Id. Moreover, "the Grandparent Visitation Act contemplates only occasional, temporary visitation that does not substantially infringe on a parent's fundamental right" to direct his or her child's upbringing. Id. at 588.

Here, there is no dispute that, following our instructions on remand, the trial court's revised order addresses the requirements of In re M.L.B. Rather, on appeal Father asserts that the trial court's findings are not supported by the evidence. In particular, Father contends that there is no evidence to support the trial court's finding that Father would entirely deny the Grandparents visitation absent a court order. We must agree.[1]

The trial court found that, absent an order on grandparent visitation, Father would deny the Grandparents visitation with H.B. Specifically, the court found that "[F]ather allowed no time to the [G]randparents for them to visit with [H.B.] outside of his supervision and control and, without the coercive intervention of the court, there will be no other time allowed by [F]ather to the [G]randparents." Appellant's Supp. App. at 9. Apparently relying on that finding, the court entered the following conclusions:

10.    The law presumes that a fit parent's decision about grandparent visitation is in the child's best interest. That presumption in this case is overcome by evidence of the close personal relationship between [H.B.] and the [Grandparents], and the fact that they will receive no grandparent visitation with her if the matter is left in [F]ather's control.

11.    The law further states that "special weight" must be given to a fit parent's decision regarding non[-]parental visitation. The court has

---

[1]    Because we find this issue dispositive, we need not consider Father's other arguments on appeal.

considered this factor, but [the court] finds the evidence overcomes and rebuts the presumption that [F]ather should have total control over this matter[] when [M]other is permitted no unsupervised parenting time by the Illinois court's order, and [F]ather will permit no unsupervised visitation to the [G]randparents absent the order of this court.

* * *

15. The entry of this order assures that [H.B.] may maintain some regular contact with [M]other's family, and they with her. Otherwise, the evidence supports a finding there will be none.

Id. at 10-11 (emphases added).

First, the trial court's judgment is clearly erroneous because its findings do not support its conclusions. See In re M.L.B., 983 N.E.2d at 585. The court found that Father would not permit any visitation with the Grandparents "outside of his supervision." Id. at 9. But the court then concluded that the presumption in favor of Father's decision making was "overcome" at least in part by "the fact [the Grandparents] will receive no grandparent visitation with [H.B.] if the matter is left in [F]ather's control." Id. at 10. The court's finding that Father would permit supervised visitation does not support the court's conclusion that the Grandparents would receive "no . . . visitation" absent a court order. Id.

This distinction is significant. As we have held, "where there is merely a disagreement between parent and grandparent" regarding the scope of visitation, "judicial intervention is more likely to infringe upon the parent's fundamental right." Neuhoff v. Ubelhor (In re C.S.N.), 14 N.E.3d 753, 762 (Ind. Ct. App. 2014). That is, where the dispute "is not whether [H.B.] and [the Grandparents] will have a relationship but on whose terms it will be, there is no need for court intervention into [Father's] decisions as

7

a fit parent." Id. (quotations omitted). Thus, as the trial court found first that Father did not deny the Grandparents visitation altogether, but merely restricted the scope of such visitation, the trial court's conclusions to the contrary are clearly erroneous.

Second, insofar as the trial court did find that Father would deny the Grandparents visitation with H.B. absent a court order, the court's findings are not supported by the evidence. At the fact-finding hearing, Father testified, and the Grandparents did not refute, that he had "encourage[d]" the Grandparents to attend H.B.'s extracurricular activities at their convenience and that he would "not have a problem" with the Grandparents "phoning and talking to [H.B.]." Tr. at 61, 67. The Grandparents likewise testified that Father had "accommodate[d]" their request to spend extra time with H.B. following a soccer game to celebrate Mother's birthday but that, other than that one request, they had "never asked" Father to make accommodations for them to visit with H.B. Id. at 32-33. Father further testified that he had reached out to other members of Mother's family to keep H.B. involved in their lives. Thus, neither Father's words nor his actions demonstrate that he was unwilling to accommodate the Grandparents' visitation requests absent a court order.

In support of the trial court's judgment, the Grandparents assert that Father refused to respond to various text messages they had sent him. But the Grandparents' assessment of the record is inaccurate. The relevant provision of the transcript states as follows:

> Q. [by Father's attorney to Grandmother]: . . . you don't think it's possible for you to just ask him when you want to do certain things . . . with [H.B.]?
>
> A. Two times. I mean I text, I said, hey, can we see [H.B.] or can we do this, and he never text[ed] back, so, I would take that as a[] no. And I

called and never got an answer, so I didn't want to be maybe subject to harassment . . . .

Id. at 33.  Father explained those circumstances as follows:

Q. [by Father's attorney]:    . . . [W]hat's the story about this text that . . . the . . . grandparent said she sent you that you didn't answer?

A.    I did get a text from a phone number, and grant[ed] I've had, and I counted [them] up this morning, eleven different numbers contact me from somebody related to [Mother,] people from California even, and it said, what about grandparent visitation and that was it.  It was during a period of time when I thought [Mother] and her mom were fighting, and I'd rather not get in the middle of their issues, than can cause me and[] more prominently [H.B.] problems.

Q.    Okay.  So, did you not respond to it?

A.    I did not respond.

Q.    Has she called to talk to you . . . ?

A.    She has not.

Q.    Or the grandfather, has he called to ask you that [sic]?

A.    He's never called me.  Like I said, I got a text message but I don't [sic] know who sent it . . . [.  I]t could be anybody but I suppose he could have sent the text.

Id. at 66.

This evidence does not support the court's finding, insofar as the court did find, that Father would deny the Grandparents visitation with H.B. absent a court order. Rather, the undisputed evidence shows that Father did not respond to one text from the Grandparents because that text message simply was lost in the shuffle of similar messages from Mother's family.  And while the Grandparents testified that Father also did not return a phone call, they did not testify that they had left Father a message that

9

would have made him aware they had called and that he should return their call.  We hold that such a scant evidentiary showing does not overcome a fit parent's decision about grandparent visitation and, as such, is not sufficient to vitiate Father's constitutional right to direct his child's upbringing.  See In re M.L.B., 983 N.E.2d at 586.  In other words, the evidence does not support the trial court's finding that the Grandparents would "receive no grandparent visitation with [H.B.] if the matter is left in [F]ather's control." Appellant's Supp. App. at 10.  The trial court's judgment is reversed, and Father's "discretion to determine the level of Grandparents' visitation in accordance with [his] parental rights and [H.B.'s] best interests is restored."  In re C.S.N., 14 N.E.3d at 762.

Reversed.

BAILEY, J., and PYLE, J., concur.