

**FILED**

Aug 28 2015, 9:54 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEYS FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Lisa M. Dillman | Heather George Myers |
| Miranda R. Richard | Greenwood, Indiana |
| Indianapolis, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re: Grandparent Visitation of K.M., | August 28, 2015 |
| F.M., | Court of Appeals Case No. 70A01-1503-MI-88 |
| *Appellant-Respondent,* | Appeal from the Rush Circuit Court |
| v. | The Honorable David E. Northam, Judge |
| K.F., | Trial Court Cause No. 70C01-1410-MI-335 |
| *Appellee-Petitioner.* | |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Respondent, F.M. (Mother), appeals the trial court's Order awarding grandparent visitation of her minor child, K.M. (Child), to Appellee-Petitioner, K.F. (Grandmother).

We affirm in part, reverse in part, and remand.

## ISSUES

Mother raises two issues on appeal, which we restate as follows:

(1) Whether the trial court clearly erred in granting Grandmother's petition for grandparent visitation; and

(2) Whether the trial court abused its discretion by awarding an excessive amount of grandparent visitation.

## FACTS AND PROCEDURAL HISTORY

Mother and H.F. (Father) are the biological parents of the Child, born in October of 2012. On Thanksgiving Day of 2012, Mother and Father took the one-month-old Child to meet the Child's paternal Grandmother and other members of Father's family for the first time. Thereafter, between November of 2012 and May of 2013, Grandmother visited with the Child, who was always accompanied by Mother, approximately once or twice per month.

In May of 2013, Mother ended her relationship with Father as a result of Father's ongoing substance abuse. Then, in June of 2013, Mother obtained a protective order against Father, which prohibited him from having any form of

contact with Mother or the Child. Although the protective order did not apply to Grandmother, Grandmother made no attempts to contact Mother or the Child out of concern "that such contact would be viewed a[s] indirect contact by Father in violation of the protection order." (Appellant's App. p. 7). At some point, Father filed a petition to establish paternity, custody, and parenting time.

[6] On February 13, 2014, by agreement of the parties, Father's paternity was established, and he was awarded supervised parenting time and ordered to pay child support. Nine days later, Father passed away. At the time of Father's death, Grandmother had not seen the Child in over nine months. However, a few days after Father's passing, Mother and the Child met Grandmother at a restaurant where they spent several hours visiting, and Mother subsequently took the Child to Father's "Celebration of Life" event where they visited with Grandmother and other members of Father's family. (Tr. p. 25). Grandmother saw the Child approximately three more times between March and May of 2014.

[7] Grandmother's last visit with the Child occurred on May 20, 2014. After Grandmother had asked about seeing the Child, Mother arranged for Grandmother to pick the Child up from daycare. Grandmother requested an overnight visit with the Child, but Mother explained that she was not comfortable with that and instructed Grandmother to return the Child by either 8:00 p.m. (according to Mother) or 8:30 p.m. (according to Grandmother). Prior to this point, Grandmother had never spent any time alone with the

Child. When Grandmother had not returned the Child by 8:00 p.m., Mother stated that she repeatedly tried to call and text Grandmother, who did not answer. At 8:30 p.m., Grandmother contacted Mother to state that she had lost track of time and was preparing to leave. A while later, Grandmother called Mother to inform her that they were en route but had forgotten the diaper bag. Mother stated that they could arrange to get the diaper bag at a later date because the Child needed to come home and go to bed. Mother claimed that instead of simply returning the Child at the agreed-upon time, each time Grandmother called, she repeatedly demanded that the Child be allowed to spend the night. Conversely, Grandmother stated that she only asked if the Child could spend the night when she and Mother were initially arranging the visit, and upon Mother's denial, she did not reiterate her request.

[8] According to Mother, Grandmother did not return with the Child until shortly before 11:00 p.m., whereas Grandmother claimed to have dropped the Child off at approximately 10:00 p.m. When Grandmother arrived with the Child, the Child was wearing only a diaper, was crying, and was covered in vomit. Grandmother explained that the Child had vomited while in her car seat, but she had been unable to clean the Child up having forgotten the diaper bag. According to Grandmother, the Child had been ill for several days. Mother, however, insisted that the Child was not sick and only vomited because Grandmother disregarded Mother's instructions not to give the Child any milk.

[9] Following the May 20, 2014 visit, Mother ceased communicating with Grandmother and did not permit any further visitation. On October 1, 2014,

Grandmother filed a Verified Petition for Grandparent Visitation. On January 8, 2015, the trial court conducted a hearing. On February 9, 2015, the trial court issued its Order granting Grandmother's petition for grandparent visitation.

[10] Mother now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[11] In matters of family law, our court accords "substantial deference" to the decisions of the trial court. *In re Visitation of L-A.D.W.*, No. 82S01-1507-DR-452, 2015 WL 4597564, at *4 (Ind. July 30, 2015). Pursuant to Indiana Code section 31-17-5-6, the trial court supported its Order for grandparent visitation with specific findings of fact and conclusions thereon. As such, on appeal, our court applies the well-established, two-tiered Indiana Trial Rule 52 standard of review: first, we consider whether the evidence supports the trial court's findings; second, we determine whether the findings support the judgment. *In re Visitation of H.B.*, 21 N.E.3d 867, 870 (Ind. Ct. App. 2014) (quoting *In re visitation of M.L.B.*, 983 N.E.2d 583, 585 (Ind. 2013)). We "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). We will find clear error if "there is no evidence supporting the findings or the findings fail to support the judgment[,]" or if the trial court "applies the wrong legal standard to properly found facts." *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009).

## II. *Grandparent Visitation Act*

[12] The Fourteenth Amendment to the United States Constitution "'provides heightened protection against government interference with certain fundamental rights and liberty interests[,]'" including the fundamental right of parents to make decisions concerning "the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997)). On the other hand, it is well settled that "grandparents do not have the legal rights or obligations of parents and do not possess a constitutional liberty interest with their grandchildren." *K.I. ex rel. J.I.*, 903 N.E.2d at 462. Nevertheless, the Indiana General Assembly recognized "that 'a child's best interest is often served by developing and maintaining contact with his or her grandparents.'" *Id.* Thus, the General Assembly enacted the Grandparent Visitation Act and "balanced two competing interests: 'the rights of the parents to raise their children as they see fit and the rights of grandparents to participate in the lives of their grandchildren.'" *Id.*

[13] The Grandparent Visitation Act provides:

> (a) A child's grandparent may seek visitation rights if:
>
> > (1) the child's parent is deceased;
> >
> > (2) the marriage of the child's parents has been dissolved in Indiana; or

> > (3) subject to subsection (b), the child was born out of
> > wedlock.

> (b) A court may not grant visitation rights to a paternal
> grandparent of a child who is born out of wedlock under
> subsection (a)(3) if the child's father has not established
> paternity in relation to the child.

Ind. Code § 31-17-5-1. If a grandparent has standing to seek visitation under this statute, "[t]he court may grant visitation rights if the court determines that visitation rights are in the best interests of the child." I.C. § 31-17-5-2(a).

[14] In order to protect a parent's fundamental right to direct her child's upbringing, the trial court is required to issue findings of fact and conclusions thereon that address the following four factors:

> > (1) a presumption that a fit parent's decision about
> > grandparent visitation is in the child's best interests (thus
> > placing the *burden* of proof on the petitioning
> > grandparents);

> > (2) the "special weight" that must therefore be given to a fit
> > parent's decision regarding nonparental visitation (thus
> > establishing a heightened *standard* of proof by which a
> > grandparent must rebut the presumption);

> > (3) "some weight" given to whether a parent has agreed to
> > some visitation or denied it entirely (since a denial means
> > the very *existence* of a child-grandparent relationship is at
> > stake, while the question otherwise is merely *how much*
> > visitation is appropriate); and

> (4) whether the petitioning grandparent has established that visitation is in the child's best interests.

*In re Visitation of M.L.B.*, 983 N.E.2d at 586. "The first three required factors implement the constitutionally protected right of fit parents to make child rearing decisions, and reflect the significant burden of proof grandparents must carry to override those decisions." *Id.* at 587. As to the fourth factor, in determining the child's best interests, "the court may consider whether a grandparent has had or has attempted to have meaningful contact with the child." I.C. § 31-17-5-2(b). Our courts have consistently found "that a child's best interests do not necessarily override" a parent's right to control his or her child's upbringing. *In re Visitation of M.L.B.*, 983 N.E.2d at 586.

In concluding that court-ordered grandparent visitation was warranted, the trial court found that "Mother does not believe it is important for the [C]hild to see Paternal Grandmother" and has "no intentions of establishing or fostering a relationship between the [C]hild and Paternal Grandmother." (Appellant's App. p. 8). Rather, the trial court found that Mother "will leave it . . . up to the [C]hild to determine if she wants a relationship with Paternal Grandmother when the [C]hild is old enough to make that decision." (Appellant's App. p. 8). Ultimately, the trial court determined that "re-establishing such a relationship [with Grandmother] is in the best interest of the . . . [C]hild." (Appellant's App. p. 12).

## A. *Order for Visitation*

[16] Mother claims that the trial court erred by granting Grandmother's petition for visitation with the Child because even though

> the trial court acknowledges the four factors in its [O]rder, . . . the trial court's analysis under each factor reveals that Mother was not properly afforded the presumption that her decision to deny visitation was in Child's best interest, nor was her decision given special weight as is required by law. The [O]rder does not discuss the lion share of Mother's evidence showing that Paternal Grandmother made irresponsible choices with regard to Child that led Mother to believe if visitation continued, Paternal Grandmother would continue to make poor choices with Child's health, safety and emotional well-being.

(Appellant's Br. p. 6). In particular, Mother argues that the trial court omitted any findings as to "Grandmother's irresponsible choices regarding the Child's health care"—*i.e.*, allegedly giving the Child milk contrary to Mother's instructions; Grandmother's failure to return the Child at the agreed-upon time; and the fact that Grandmother jeopardized the Child's safety by encouraging Father's interaction with the Child despite Grandmother's knowledge that Father had "a problem" with drug abuse. (Appellant's Br. p. 6; Tr. p. 53). The trial court, however, specifically stated that it had given "special weight to Mother's decision" to discontinue visitation but concluded:

> If we give Mother the benefit of all presumptions and special weight to her decision to terminate Paternal Grandmother's rights, she only proved that Paternal Grandmother intentionally returned the [C]hild late and made a normal grandparent mistake

on one occasion and used poor judgment in encouraging a relationship between [the Child] and her [F]ather.

(Appellant's App. p. 10).

[17] At the outset, notwithstanding the trial court's language, we note that it was not incumbent upon Mother to *prove* that she acted in the Child's best interests; this fact is presumed and "deserves special weight under the law." *In re Visitation of C.L.H.*, 908 N.E.2d 320, 329 (Ind. Ct. App. 2009). Nor was Mother obligated to *prove* misconduct by Grandmother to justify discontinuing visitation. *See In re Visitation of C.S.N.*, 14 N.E.3d 753, 759 (Ind. Ct. App. 2014). At the same time, "the special weight requirement does not require a trial court to take at face value any explanation given by a parent." *Spaulding v. Williams*, 793 N.E.2d 252, 260 (Ind. Ct. App. 2003). "It is the trial court's prerogative to listen to the evidence and determine, in light of that evidence, whether a parent's alleged justification for denying or restricting visitation with grandparents holds water." *Hicks v. Larson*, 884 N.E.2d 869, 875 (Ind. Ct. App. 2008), *trans. denied*. On review, our court will not interfere with the trial court's determinations of evidentiary weight and witness credibility. *Spaulding*, 793 N.E.2d at 260.

[18] Here, the trial court found that "Mother testified the reason she cut off contact with Paternal Grandmother was because Mother felt disrespected by Paternal Grandmother as a result of Paternal Grandmother's failure to return the [C]hild on time." (Appellant's App. p. 8). The trial court also found that "Mother further complained of Paternal Grandmother's judgment due to her

encouragement of visitation between the [C]hild and Father[] even though there was evidence that Father had drug addiction issues." (Appellant's App. p. 8). Yet, the trial court found that these "reasons for denying visitation with Paternal Grandmother were unreasonable and not in the [C]hild's best interest." (Appellant's App. p. 10). Instead, the trial court determined that Mother had an ulterior motive for cutting off contact with Grandmother, finding that "Mother testified that her fiancé's family is sufficient family for the [C]hild and that the [C]hild does not need to know or have a relationship with Father's family." (Appellant's App. pp. 8-9). Therefore, the trial court concluded that Grandmother rebutted the presumption that Mother's decision was in the Child's best interest, stating:

> This court does recognize the presumption that a fit parent acts in his or her child's best interest. If Mother's "plan" for her [Child] is successful, she will have no knowledge that her Father exists; and in fact, will replace her [F]ather with another man and his family. Mother's plan does account for the presumption that as the [C]hild grows older, she will begin to question facts she has been told are true. Whenever that time comes Mother is willing to allow her [C]hild the right to have a relationship with Paternal Grandmother. At that point Mother is willing to introduce into her [C]hild's life a total stranger to answer her questions, her Paternal Grandmother. Mother's plan is predicated upon hiding facts from her [C]hild at least until she is older. Certainly some of these facts will be uncomplimentary of her Father, and very possibly her Mother. The [c]ourt concludes that Mother's plan serves Mother's best interests by allowing her to ignore a part of her life that she considers unpleasant [by] completely ignoring the [C]hild's right to a relationship with her Paternal Grandmother. Courts have recognized it is in the best interest of a child to have a relationship with their grandparent.

(Appellant's App. pp. 9-10).

[19]     In general, we presume that "trial courts know and follow the applicable law." *Ramsey v. Ramsey*, 863 N.E.2d 1232, 1239 (Ind. Ct. App. 2007). "[T]his presumption can be overcome if the trial court's findings lead us to conclude that an unjustifiable risk exists that the trial court did not follow the applicable law." *Id.* Our court has previously overturned a grandparent visitation order where the trial court omitted pertinent, undisputed evidence from its findings, thereby "shak[ing] our confidence that it actually afforded" the parental presumption. *See In re Visitation of C.S.N.*, 14 N.E.3d at 759. Here, however, the trial court specifically considered in its findings that Grandmother had encouraged Father to establish paternity and to maintain a relationship with the Child despite his significant substance abuse problem. Regarding the final visit, the trial court also found that "[t]he [C]hild was not returned in a timely manner. Paternal Grandmother made the mistake of forgetting the diaper bag while trying to get the [C]hild home. Matters were made worse by the [C]hild getting sick." (Appellant's App. p. 7). Thus, it is clear that the trial court did not simply ignore this evidence as Mother contends. Furthermore, a review of the record reveals that there was inconsistent evidence regarding whether the Child had been ill leading up to her visit with Grandmother or whether she vomited solely because Grandmother disregarded Mother's instructions about giving the Child dairy products; the parties offered conflicting testimony as to whether Grandmother refused to answer Mother's calls and whether Grandmother repeatedly demanded that the Child be allowed to spend the

night; and the trial court specifically found that "[t]here was contradictory evidence as to whether the lateness of the return was due to mere oversight or intentional acts by . . . Grandmother in contradiction of Mother's request." (Appellant's App. p. 8). It is evident that the trial court found Grandmother's testimony more credible, and it was well within the discretion of the trial court to discredit Mother's explanation for terminating visitation.

[20] Mother also challenges the trial court's conclusion that she was not justified in terminating visitations because she was trying "to ignore a part of her life that she considers unpleasant." (Appellant's App. p. 10). According to Mother,

> [t]his conclusion ignores the efforts Mother had made in the past to allow for Paternal Grandmother and Child to spend time together and for them to try to forge a bond. If Mother was simply trying to ignore part of her life, Mother would not have allowed Paternal Grandmother to visit in the past.

(Appellant's Br. p. 11). One of the factors the trial court must address is whether a parent has entirely denied or simply limited a grandparent's contact with a grandchild. *In re Visitation of M.L.B.*, 983 N.E.2d at 586. In this case, the trial court acknowledged that Mother facilitated visits between the Child and Grandmother for the first seven months of the Child's life and on several occasions following Father's death. However, following the May 20, 2014 visit, Mother discontinued all forms of contact between Grandmother and the Child and testified resolutely during the hearing that she has no intent to permit further visitation until the Child is old enough to decide for herself. Because of Mother's complete denial of visitation, "'the case for judicial intervention' is

strengthened." *In re Visitation of C.S.N.*, 14 N.E.3d at 762 (quoting *In re Visitation of M.L.B.*, 983 N.E.2d at 587). Moreover, Mother does not challenge the trial court's other findings regarding her intent to replace Father's family with that of her fiancé, so we cannot say that it was clear error for the trial court to infer that Mother sought to eliminate Father's family from her life and the Child's life. *See Spaulding*, 793 N.E.2d at 260 (finding sufficient evidence to support the trial court's conclusion that the father's motivations for restricting grandparent visitation were selfish).

[21] Mother further asserts that Grandmother "has not demonstrated consistent effort to have a meaningful role in the Child's life." (Appellant's Br. p. 10). During the hearing, Grandmother conceded that she had never sent the Child a birthday card, Christmas card, or Christmas gift, and Grandmother could not recall the Child's birthdate. While it is a factor that may be considered, whether Grandmother attempted to have meaningful contact with the Child "is not the touchstone for determining the child's best interests." *In re Visitation of C.L.H.*, 908 N.E.2d at 328. The trial court found that Grandmother had regularly visited the Child during the first seven months of her life but did not attempt to communicate with the Child while the protective order was in force out of fear that it would seem like indirect contact on Father's part. During the hearing, Grandmother testified that

> [t]here's so much love and support within our family and . . . we want to be there for [the Child]. . . . I think about the questions that she'll have too. I'm sure there'll be many of them, but you know . . . I shudder to think and it keeps me, I won't say worried,

but I pray a lot about her not having to ask, you know, who was my daddy and, um, who was my daddy's family and didn't they want me or didn't they love me . . . . I mean there's a piece missing, and I would think with the family, with her being involved with her [Father's] family those questions would be more minimized, and, um, it would have a more positive effect versus the negative effect of always wondering why.

(Tr. p. 12). The trial court found that "Mother acknowledged that Paternal Grandmother would be the primary source of information for the [C]hild about Father and his family" and accordingly concluded that it was in the Child's best interests to have the opportunity to "benefit from a relationship with Father's family and specifically Paternal Grandmother." (Appellant's App. p. 12). Therefore, we cannot say that the trial court clearly erred in awarding grandparent visitation to Grandmother.

## B. *Amount of Grandparent Visitation Awarded*

[22] Mother also claims that the trial court abused its discretion in the amount of visitation that Grandmother was awarded. The Grandparent Visitation Act does not specify "what amount of visitation is appropriate for a trial court to award[] after it has been determined that court-ordered visitation is merited." *In re Visitation of L-A.D.W.*, No. 82S01-1507-DR-452, 2015 WL 4597564, at *4. Instead, the amount of visitation is generally a matter that is entrusted "to the sound discretion of the trial court." *K.I. ex rel. J.I.*, 903 N.E.2d at 462. Nonetheless, it is clear that "[t]he Grandparent Visitation Act contemplates only 'occasional, temporary visitation' that does not substantially infringe on a

parent's fundamental right 'to control the upbringing, education, and religious training of their children.'" *Id.* (alteration in original).

[23]    In the present case, the trial court ordered:

> 1.  Paternal Grandmother . . . shall have unsupervised visitation with [the Child] as follows:
>
>    a.  In an effort to take advantage of Mother living in Indiana for the next few months and give the [C]hild a chance to become reacquainted with Paternal Grandmother, the parties will follow the Indiana Parenting Time Guidelines[] for the period of time Paternal Grandmother is in Indiana each month.  The first month's visits shall be with Mother present.  After that the first visit each month shall be with Mother present (*sic*).
>
>    b.  Live video conference/chatting via Skype, Face-Time or some other similar media twice a month.
>
>    c.  After Mother and her fiancé are reassigned [based on the fiancé's military assignment,] visitation shall take place one weekend day a month from 9:00 a.m. to 8:00 p.m. until the [C]hild reaches four (4) years of age.
>
>    d.  After the [C]hild reaches the age of four (4), one weekend overnight a month with 9:00 a.m. for the pick-up time and 6:00 p.m. for the return time.  Paternal Grandmother shall have the option of extending overnights to two (2) consecutive overnights after the [C]hild reaches the age of five (5).
>
>    e.  If Paternal Grandmother is scheduled to be in the [C]hild's proximity in excess of the actual visitation time she shall have three (3) hours with the [C]hild for every additional forty-eight hours she is in the area.  The exact time shall be agreed to by the parties.

f. The parties shall make every effort to schedule the monthly visits near birthdays or holidays.

g. After the [C]hild reaches the age of six (6), Paternal Grandmother shall have extended visitation during spring or summer break of the [C]hild. The parties shall agree to the details.

2. If the parties are unable to agree[,] the visitation shall be seven (7) days in length and shall commence within seven (7) days of the beginning of summer vacation. In no event shall this visitation conflict with the Mother's family vacations nor the [C]hild's activities.

3. The parties shall keep each other advised of their address and contact information at all times. Paternal Grandmother shall keep Mother advised of the [C]hild's location during visitation.

4. If Mother and the [C]hild relocate outside the [S]tate of Indiana then Mother shall give Paternal Grandmother reasonable advance notice of when the [C]hild will be in the State of Indiana, so Paternal Grandmother may try to arrange her visitation while the [C]hild is in the State of Indiana.

5. Paternal Grandmother shall have visitation at all other times as agreed upon by the parties.

6. Paternal Grandmother shall be responsible for all transportation costs of visitation.

(Appellant's App. pp. 12-14).

[24] Mother contends that "it is *prima facie* error to grant a grandparent visitation rights nearly equivalent to those of a non-custodial parent." (Appellant's Br. p. 11). Our supreme court has previously recognized that "sole reliance upon the

[Indiana Parenting Time] Guidelines is impermissible." *In re Visitation of L-A.D.W.*, No. 82S01-1507-DR-452, 2015 WL 4597564, at \*4. Yet, a visitation schedule that is *similar* to the Parenting Time Guidelines, without more, does not "require finding an abuse of discretion." *Id.* at \*6. Whether the trial court has abused its discretion in crafting a visitation schedule "is best determined upon the specific circumstances of each case." *Id.*

[25]  We agree with Mother that the trial court's order for the parties to follow the Indiana Parenting Time Guidelines up until the point that Mother and the Child relocate—however long that period of time may be—is excessive. Unlike *In re Visitation of L-A.D.W.*, where the grandparents provided primary care for the child and even lived with the child for significant periods of time to help raise her, in this case, Grandmother was not significantly or consistently involved in the Child's daily life. *See id.* at \*7. For the first seven months of the Child's life, Grandmother enjoyed only sporadic visits with the Child, during which Mother was always present. Grandmother has never spent more than a few hours with the Child during any given visit and has never had the Child overnight, and there have been significant gaps in Grandmother's contact with the Child. During the hearing, Grandmother explained that she has never been around during the Child's bedtime to know the Child's nightly routine. Thus, the specific circumstances of this case do not warrant a visitation schedule that is similar to the parenting time of a non-custodial parent. We therefore vacate the portion of the trial court's Order awarding visitation in accordance with the Parenting Time Guidelines.

[26] Mother also asserts that the trial court abused its discretion because the amount of visitation awarded exceeded the amount requested by Grandmother. During the hearing, Grandmother asked that she be allowed to visit with the Child one weekend day every four to six weeks, one day near Christmas, and one day near the Child's birthday. Following an initial period of visitation under the Parenting Time Guidelines, the trial court ordered regular visitation that would increase in duration based on the Child's age, eventually reaching monthly visits that consist of two overnights and at least one full week during the Child's spring or summer vacation. In *In re Visitation of M.L.B.*, 983 N.E.2d at 587, our supreme court determined that, although it was within the discretion of the trial court "to order some degree of visitation to ensure that [the child's] relationship with [the grandparent] would continue, the amount of visitation awarded far exceed[ed] the parties' earlier pattern. It even exceed[ed] what [the grandparent] requested."

[27] In general, the parties' earlier pattern of visitation "suggests an amount of visitation that might be awarded without unduly interfering in Mother's fundamental right to direct [the Child's] upbringing." *Id.* While Grandmother previously enjoyed non-overnight visits with the Child once or twice per month, we recognize that such an arrangement may not be feasible going forward without substantially infringing on Mother's constitutional rights as a fit parent. Mother testified that upon her fiancé's graduation from the United States Army Ranger School, they planned to get married, after which she and the Child would relocate depending on their military assignment. At the time of the

hearing, Mother stated that they would likely be relocated either overseas to Italy or to Seattle, Washington. Although the trial court ordered that Grandmother would be responsible for all travel costs associated with the visitation, it does not appear that the trial court took into consideration the logistics of requiring a visitation schedule that would involve cross-country or trans-Atlantic travel for a toddler *every* month. This would undoubtedly place an unreasonable burden on both Mother and the Child. We therefore remand with instructions for the trial court to craft a new visitation schedule that contemplates the distance involved and the effect that traveling will have on the young Child, while also respecting Mother's authority to direct her Child's upbringing.

[28] Finally, Mother challenges the trial court's directive requiring Grandmother and the Child to engage in live video conferencing two times each month. According to Mother, "[t]here is no such requirement in the Guidelines afforded to [a] non-custodial parent"; thus, "Grandmother is getting more opportunities than a non-custodial parent would be afforded for parenting time when distance is a major factor." (Appellant's Reply Br. p. 6). We disagree. The Indiana Parenting Time Guidelines provide that parents "shall have reasonable phone access to their child" and the "right to communicate privately" by mail or other electronic communications without interference by the other parent. Ind. Parenting Time Guideline § I(A)(3)-(5), (7). In turn, "[t]he Grandparent Visitation Act does not address contact between grandparents and grandchildren other than 'visitation,' a term that our

legislature has not defined." *Spaulding*, 793 N.E.2d at 263. We have previously found that "any contact or communication ordered, other than visitation, should be applied narrowly to preserve and protect a parent's rights." *Id.* In this case, the trial court ordered live video-chatting between Grandmother and the Child twice per month, but it did not otherwise restrict Mother's authority to set reasonable limits on these interactions. *See id.* at 264 (finding the trial court's order for the grandparents to be able to send written communications to the child without parental interference was overly broad as it "borrow[ed] language wholesale from the Parenting Guidelines" and "erroneously treat[ed] [g]randparents as if they were parents"). Therefore, we find no abuse of discretion regarding the order for twice-monthly video-chatting.

## CONCLUSION

[29] Based on the foregoing, we conclude that the trial court did not err in granting Grandmother's petition for grandparent visitation. We further conclude that the trial court abused its discretion by ordering a visitation schedule that is excessive and unduly burdensome on both Mother and the Child.

[30] Affirmed in part, reversed in part, and remanded.

[31] Friedlander, J. and Brown, J. concur