ATTORNEYS FOR APPELLANT
Laurie Baiden Bumb
Bumb & Vowels, LLP
Evansville, Indiana

Thomas A. Massey
Massey Law Offices
Evansville, Indiana

ATTORNEYS FOR APPELLEE
Keith W. Vonderahe
Molly E. Briles
Ziemer, Stayman, Weitzel & Shoulders, LLP
Evansville, Indiana

# In the
# Indiana Supreme Court

**FILED**

Jul 30 2015, 3:20 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 82S01-1507-DR-452

IN RE THE VISITATION OF L-A.D.W.

R.W.,

*Appellant (Respondent below),*

v.

M.D. AND W.D.,

*Appellee (Petitioners below).*

Appeal from the Vanderburgh Superior Court, No. 82D04-1305-DR-465
The Honorable Mary Margaret Lloyd, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 82A01-1402-DR-82

**July 30, 2015**

**David, Justice.**

From the time of her birth, L-A.D.W. had a close relationship with her maternal grandparents, M.D. and W.D. (Grandparents). Grandparents lived with L-A and her parents,

L.A.D. (Mother) and R.W. (Father), beginning when L-A was born. Even after Grandparents returned to their own home, they remained a part of L-A's daily life. In 2010, Mother was diagnosed with stage four cancer, and Grandparents moved back into Mother and Father's home to help care for Mother and L-A. After Mother's three-year battle with cancer and amidst the dissolution of her marriage, Mother passed away in April 2013. L-A was only eight years old.

In accordance with Mother's wishes as expressed in her will, Grandparents filed for visitation rights with L-A under the Grandparent Visitation Act. Ind. Code § 31-17-5-1 (2014). Grandparents' and Father's relationship had grown contentious over the course of Mother's illness and her deteriorating marriage. Grandparents feared that Father would totally discontinue any contact between them and L-A. Grandparents believed that court-ordered visitation was the only way to maintain a regular and meaningful relationship with their only grandchild. Conversely, Father wished to control any visitation schedule Grandparents had with L-A.

After a hearing, in which two mental health experts opined on what would be in the best interest of L-A, the trial court determined that it was in L-A's best interest to have a meaningful and ongoing relationship with Grandparents. The trial court ordered a visitation schedule, which followed the visitation schedule that was initially recommended by one of the mental health experts. This schedule was crafted to allow L-A to transition into the primary care of her Father.

Father appealed, arguing that the trial court failed to give special weight to his decisions regarding L-A's upbringing, or to properly apply the presumption that a fit parent acts in the child's best interest. Father also disputed the amount of visitation that was awarded. On appeal, the Court of Appeals affirmed the trial court's order for grandparent visitation but reversed and remanded on the amount of visitation, determining that the amount of visitation exceeded the "occasional, temporary visitation" that is permitted under the Grandparent Visitation Act. In Re Visitation of L-A.D.W., 24 N.E.3d 500, 516 (Ind. Ct. App. 2015) (citation omitted).

2

Although the Court of Appeals found that the amount of visitation was improper under the Grandparent Visitation Act, the court first noted that "Indiana courts have not established a set standard for 'occasional, temporary visitation.'" Id. at 515 (citation omitted). Thus, the court looked to past decisions for guidance. Id. We likewise recognize that this Court has not provided a standard for determining what *amount* of visitation is appropriate under the Grandparent Visitation Act. However, we are not convinced that precedent compels finding an abuse of discretion in the current case. Although we do not seek to set out steadfast rules regarding the permissible amount of visitation that can be ordered, transfer is granted to reaffirm the discretion of the trial court in assessing what amount of visitation would be in the child's best interests. After reviewing the circumstances of this particular case, we hold that the trial court did not abuse its discretion in setting the amount of grandparent visitation. We affirm the entirety of the trial court's order granting grandparent visitation.

**Facts and Procedural History**

L.A.D. (Mother) and R.W. (Father) were married and had a single child together, L-A.D.W. (L-A). Father is an anesthesiologist, and Mother worked as a pediatric dentist. Due to Father's demanding work schedule, L-A's maternal grandparents, M.D. and W.D. (Grandparents), helped provide care for L-A from the time she was born. Grandparents even lived in Mother and Father's home beginning when L-A was born in order to help Mother care for her.

In July 2010, Mother was diagnosed with stage four colon cancer. L-A was only five years old. At that time, Grandparents moved back into Mother and Father's home to assist with caring for L-A. Grandparents' role in L-A's life was largely parental in nature. Grandparents packed L-A's lunches for school, helped her with homework, read to her at night, did her laundry, cooked meals for the family, regularly took her to school and picked her up, and went on multiple vacations with the family. During the first eight years of L-A's life, Father spent only minimal parenting time with L-A, rarely even taking her to and from school.

Amidst Mother's battle with cancer, Mother filed to dissolve her marriage with Father. However, before the dissolution was final, Mother passed away on April 17, 2013. Mother had indicated in her will that she wished for Grandparents to pursue generous visitation rights with L-A. Grandparents first requested that they work out some kind of visitation agreement, outside of court, but Father never responded to this request. Grandparents soon felt that they were being cut out of L-A's life and that their relationship with L-A would be terminated without court-ordered visitation. In accordance with Mother's wishes, Grandparents filed for Grandparent Visitation rights soon after Mother's passing.[1] Grandparents sought meaningful visitation time with L-A, but did not dispute that Father was fit to be L-A's primary caregiver.

Right before Mother's passing, Laura Ellsworth, MA,[2] a licensed mental health counselor, had been contacted by Father to assist the family in developing a parenting time schedule that would be in the best interest of L-A. After Mother's death, Ellsworth continued consulting with the family to help L-A transition from staying with Grandparents on a regular basis to being cared for primarily by Father. Ellsworth conducted multiple interviews with Father, Grandparents, and L-A to determine what was in L-A's best interest. Some interviews were conducted individually and some were conducted as group sessions. Ellsworth concluded that due to L-A's close relationship with Grandparents throughout her life, it would be in her best interest to have regularly scheduled time with Grandparents. She also found it "disturbing" that Grandparents had only three overnights and one at-home visitation with L-A in the five months following Mother's death.[3]

---

[1] Indiana Code Section 31-17-5-1 provides in pertinent part, "[a] child's grandparent may seek visitation rights if: (1) the child's parent is deceased . . . ."

[2] Laura Ellsworth obtained a graduate degree is psychology and has been licensed in the State of Indiana as a mental health counselor for over twenty years.

[3] Ellsworth recommended the following schedule: 1) one overnight on one weekend during even-numbered months; 2) two overnights on one weekend during odd-numbered months; 3) one afternoon after school each week from the end of the school day until after dinner at 7:00 p.m.; 4) four hours on Mother's birthday;

4

(App. at A213.)  Despite an apparent agreement that Father would comply with the recommended schedule, the schedule was not followed.

Grandparents also hired a mental health expert, Dr. Rebecca Luzio, in order to provide a recommendation regarding what type of visitation was in the best interest of L-A.  Ellsworth and Dr. Luzio frequently consulted with one another regarding their observations.  Ultimately, both testified at the visitation hearing that Father was a fit parent and that grandparent visitation was in L-A's best interest.  The experts disagreed only on whether it was necessary for there to be court-ordered visitation.  Ellsworth believed that Father should be allowed to determine a visitation schedule, while Dr. Luzio was of the opinion that court-ordered visitation was necessary to ensure that L-A maintained a meaningful and regular relationship with Grandparents.

After hearing testimony and reviewing the evidence, the trial court entered findings of fact and conclusions of law.  The trial court concluded that Father would have likely denied all visitation between Grandparents and L-A, had the visitation proceedings not been pending.  Furthermore, it is in L-A's best interest to continue to have a relationship with Grandparents, and a court order is necessary to ensure regular and meaningful contact.  Accordingly, the court ordered that Grandparents receive structured and unsupervised grandparent visitation time and provided a visitation schedule.[4]

---

5) one overnight during the week of L-A's birthday; 6) two overnights during L-A's Christmas vacation; and 7) five consecutive overnights during L-A's summer vacation.

[4] The court-ordered visitation is as follows: 1) one overnight on one weekend during even-numbered months; 2) two overnights on one weekend during odd-numbered months; 3) unless the parties otherwise agreed, all weekend visitation is to occur during Father's on-call weekends, and Father is to provide notice of when those weekends are; 4) if Father's employment changes and he is no longer on-call, visitation on the weekends will be held on the third weekend of the month; 5) every Tuesday during the school year from after school until 7:00 p.m., and during the summer from 10:00 a.m. until 7:00 p.m.; 6) eight hours on

Father appealed, asserting that the trial court abused its discretion in granting grandparent visitation. Specifically, Father asserted that: 1) special weight was not given to his decision as a fit parent to determine a visitation schedule that was in L-A's best interest, especially when he had only limited and not denied visitation to Grandparents; 2) the order was not supported by the court's findings of fact and conclusions of law; and 3) the order exceeded the appropriate amount of visitation time, which was to be occasional and temporary.

The Court of Appeals affirmed the trial court's award of grandparent visitation by holding: 1) the trial court had granted Father's decisions concerning visitation special weight; 2) the trial court afforded weight to the fact that Father had allowed some visitation in the past; and 3) there was evidence to support the trial court's conclusion that Father's intention to deny L-A a relationship with her Grandparents was not in her best interest. In Re Visitation of L-A.D.W., 24 N.E.3d at 511, 514, 516. However, the Court of Appeals reversed the trial court regarding the amount of grandparent visitation that was ordered. Id. at 515-16.

The Court of Appeals relied upon guidance from this Court and prior Court of Appeals decisions in assessing whether the order exceeded "occasional, temporary visitation." Id. (citation omitted). The court considered a prior case where an abuse of discretion was found when less visitation was ordered than in the present case and that the visitation schedule was "very similar" to parenting time for non-custodial parents. Id. Thus, the Court of Appeals determined that the trial court abused its discretion in the amount of visitation Grandparents would receive. Id.

---

Mother's birthday; 7) four hours on Grandmother's and Grandfather's birthdays; 8) one overnight during the week of L-A's birthday; 9) two overnights during L-A's Christmas vacation; 10) five consecutive overnights during L-A's summer vacation in addition to the already scheduled weekend overnights that month; and 11) Grandparents will continue to attend L-A's extracurricular activities, and Father will provide notice of those.

Father petitioned for transfer, asserting that the trial court did not afford Father's decision as a fit parent special weight, and no evidence supported that Father would deny visitation to Grandparents. Father also requested that this Court adopt a standard of clear and convincing evidence before courts can find that grandparents have sufficiently rebutted that the decisions made by a fit parent are in the child's best interest.

We accept transfer and summarily affirm the Court of Appeals on the issues relating to the trial court's order granting grandparent visitation. Ind. Appellate Rule 58(A)(2). We agree that the trial court did not abuse its discretion in granting grandparent visitation. However, we grant transfer in order to address the amount of grandparent visitation that is permissible under the Grandparent Visitation Act. The appropriate amount of visitation will inevitably vary depending on the circumstances of each case. We hold that in this case, the trial court did not abuse its discretion in the amount of Grandparent visitation that was ordered. As such, we affirm the entirety of the trial court's order.

**Standard of Review**

Under the Grandparent Visitation Act, "the amount of visitation is left to the sound discretion of the trial court." K.I. ex rel. J.I. v. J.H., 903 N.E.2d 453, 462 (Ind. 2009). Moreover, our review is conducted with a "preference for granting latitude and deference to our trial judges in family law matters." Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002) (quoting In Re Marriage of Richardson, 622 N.E.2d 178, 178 (Ind. 1993)).

**Discussion**

**I.    Amount of Grandparent Visitation Awarded**

Indiana has enacted legislation which recognizes that "a child's best interest is often served by developing and maintaining contact with his or her grandparents."  K.I., 903 N.E.2d at 462 (quoting Swartz v. Swartz, 720 N.E.2d 1219, 1221 (Ind. Ct. App. 1999)).   Yet, neither the Grandparent Visitation Act[5] nor this Court has specifically set a standard for determining what amount of visitation is appropriate for a trial court to award, after it has been determined that court-ordered visitation is merited.[6]

This Court has stated that "[t]he Grandparent Visitation Act contemplates only occasional, temporary visitation that does not substantially infringe on a parent's fundamental right to control the upbringing, education, and religious training of their children."  K.I., 903 N.E.2d at 462 (internal citations and quotations omitted).  This pronouncement recognizes that while parents have a constitutional liberty interest in the upbringing of their child(ren), Grandparents are not afforded the same legal rights as parents and do not have a constitutional liberty interest with their grandchildren.  See Id. at 462.  This broad constitutional protection does not require, nor do we think it would be wise to set, a strict guideline for grandparent visitation.  Similarly, we do not read this constitutional protection to require crafting visitation schedules that in no way resemble visitation under the Parenting Time Guidelines, even though sole reliance upon the Guidelines is

---

[5] Ind. Code §§ 31-17-5-1, -10 (2014).

[6] "When a trial court enters a decree granting or denying grandparent visitation, it is required to set forth findings of fact and conclusions of law," and those findings and conclusions must address the four McCune factors.  K.I., 903 N.E.2d at 462 (citing McCune v. Frey, 783 N.E.2d 752, 757 (Ind. Ct. App. 2003)).  We summarily affirmed the Court of Appeals analysis which held that court-ordered visitation was proper in this case, and we now only address what amount of visitation can be ordered.

impermissible.[7] See Id. at 461-62. Rather, we continue to give substantial deference to the trial court's determination of family law matters. See Kirk, 770 N.E.2d at 307. We also remain confident in the ability of our courts to determine when grandparent visitation would substantially infringe upon the custodial parent's constitutional right to guide the upbringing of their child. See e.g. Hoeing v. Williams, 880 N.E.2d 1217, 1221-22 (Ind. Ct. App. 2008) (determining awarded visitation impermissibily impeded Mother's ability to direct child's religious upbringing).

However, we reiterate that grandparent visitation is not to be confused with the rights of the custodial parent. The rights of grandparents to seek visitation is not rooted in common law, but is a product of legislation. See In Re Visitation of M.L.B., 983 N.E.2d 583, 585 (Ind. 2013). The Indiana legislature did not even pass a law allowing for grandparent visitation until 1982. See Ind. Code § 31-1-11.7-1, -8 (1982). Despite grandparents having some recognized right to visitation, the "natural parents have a fundamental constitutional right to direct their children's upbringing without undue governmental interference . . . ." In Re Visitation of M.L.B., 983 N.E.2d at 586. Under the Grandparent Visitation Act, the trial court has authority to order visitation and set the amount of visitation, but nowhere within that legislation has the court been permitted to award grandparents the right to determine the child's upbringing. See Ind. Code §§ 31-17-5-1, -10. Even in cases involving parenting time of a non-custodial parent, Indiana courts have recognized that the custodial parent's right to direct the child's upbringing is "paramount" to the non-custodial parent's right to visitation, as long as interference with the non-custodial parent's visitation is reasonable. A.G.R. ex rel. Conflenti v. Huff, 815 N.E.2d 120, 125 (Ind. Ct. App.

---

[7] We note the potential difficultly that would be imposed upon trial courts if we were to hold that grandparent visitation could not even resemble visitation that may be awarded under the Parenting Time Guidelines. It is likely that grandparents and children alike would want visitation to occur on birthdays, holidays, and when the child is on breaks from school, just as non-custodial parents would prefer. We decline to impose an unworkable standard that would require courts to fashion arbitrary visitation schedules in order to avoid the risk of the schedule looking too similar to the Parenting Time Guidelines.

2004); See also Periquet-Febres v. Febres, 659 N.E.2d 602, 606 (Ind. Ct. App. 1995). Likewise, in the case of grandparent visitation, the custodial parent's right to direct the upbringing of the child remains paramount.

In light of this understanding regarding the scope of grandparent visitation rights, we seek to address the specific issue presented in this case: Did the trial court abuse its discretion in the amount of visitation that Grandparents were awarded? After examining this Court's precedent, we do not find that the amount of visitation awarded in this case was an abuse of discretion under the Grandparent Visitation Act.

In K.I., this Court held that the trial court abused its discretion in granting grandparents visitation in the context of a custody modification proceeding, and in awarding the amount of grandparent visitation pursuant to the Indiana Parenting Time Guidelines. 903 N.E.2d at 462. Even though the case was a grandparent visitation dispute, "it was not litigated under the Grandparent Visitation Act." Id. Rather, the trial court treated the case as a custody modification, and visitation was ordered pursuant to the Indiana Parenting Time Guidelines. Id. After considering that the Parenting Time Guidelines repeatedly reference only parents, this Court suggested that the Parenting Time Guidelines "have no mandatory application to grandparent visitation disputes." Id. at 461 (internal citations and quotations omitted). The Court provided no specific standard for determining the proper amount of visitation, but only concluded that the Court could not treat grandparent visitation as a custody modification and solely rely on the Parenting Time Guidelines in setting a visitation schedule.

In the present case, it is not disputed that the trial court properly relied upon the Grandparent Visitation Act when it ordered visitation and set the amount of visitation. We recognize that the Court of Appeals expressed the concern that the trial court's order was "very similar to the parenting time schedule a non-custodial parent would have." In Re Visitation of L-A.D.W., 24 N.E.3d at 515. However, the present case is unlike K.I., where the trial court explicitly relied upon the Parenting Time Guidelines in granting the amount of visitation. Here, the Court

10

of Appeals only determined that the ordered visitation appeared similar to a parenting time schedule. We are not persuaded that similarity alone would require finding an abuse of discretion.

Nor are we persuaded that cases from our Court of Appeals support finding an abuse of discretion. The holdings from the few prior cases that have specifically addressed the amount of grandparent visitation appear to have been case specific. As such, we glean from these cases that abuse of discretion is best determined upon the specific circumstances of each case. The brief analysis of the two cases below demonstrates the fact-sensitive nature of grandparent visitation.

In Swartz, the mother had been the child's primary caregiver due to the father's military career. 720 N.E.2d at 1220-21. After the parents dissolved their marriage, the mother disputed the amount of grandparent visitation that had been awarded to the paternal grandparents. Id. at 1221. The Court of Appeals considered a variety of factors in determining that the awarded amount of visitation was not in the child's best interest. Id. at 1222-23. The case-specific circumstances which persuaded the court included: 1) under the order, the child would be living among four different household on alternating weekends, running counter to the goal of "stability" for the child; 2) the order prohibited the mother from involving the child in any activities that would take place on the grandparents' weekends without the mother first receiving permission; 3) having the child live outside the home seventy-three days per year would alter the close, healthy, and loving relationship the child had with the mother;[8] 4) the father at any time may also decide to exercise his own visitation rights, which could even further increase the amount of time the child would be shuttled from one home to the next; and 5) the ordered visitation was unnecessary

---

[8] As in the present case, we note that the court in Swartz considered the total number of days that the grandparents were awarded visitation. We do not seek to imply that the number of days awarded is not a relevant factor in assessing the appropriate amount of grandparent visitation. Rather, we only seek to emphasize, as the Court of Appeals does in Swartz, the number of days awarded is only one fact to be considered in light of all of the circumstances.

11

where mother had never denied the grandparents access to the child and all the parties had a good relationship.  Id. at 1222.  The court recognized that awarding extensive overnight visits, when grandparents had never previously been permitted to keep the child overnight and mother otherwise granted unlimited, unsupervised visitation, effectively gave grandparents the rights of a parent.  Id. at 1221-1223.

In Hoeing, the trial court specifically ordered reasonable grandparent visitation, and determined that if the "parties cannot agree to a visitation schedule, the Indiana Parenting Time Guidelines shall apply [except for midweek]."  880 N.E.2d at 1220 (footnote omitted).[9]  The Court of Appeals explained that the grandparents had not filed an appellee's brief in response to mother's appeal, requiring the mother to only have to demonstrate prima facie error.  Id. at 1221.  Due to that, the court concluded that granting visitation rights equivalent to those of a non-custodial parent was sufficient to establish prima facie error.  Id.  Yet even more significantly, the mother was a Jehovah's Witness and wanted to limit visitation in accordance with her religious beliefs against celebrating Christmas and other holidays.  Id. at 1222.  The court explained that the grandparents had "no statutory authority to ask the court to limit the custodial parent's right to raise that child as the parent sees fit."  Id.  Although the trial court discussed that the schedule was similar to that of a non-custodial parent, this was not the sole standard the court relied upon when determining that the ordered visitation was inappropriate.

In the present case, the trial court considered the extensive role that Grandparents played in L-A's life from the time she was born, which far exceeded the "traditional" role of a grandparent. While living in Mother and Father's home, Grandparents largely carried out parental duties, such

---

[9] It would appear that now this order would be an obvious abuse of discretion since this Court's opinion in K.I. determined that the Parenting Time Guidelines alone cannot be used to establish a grandparent visitation schedule.

as cooking meals, doing L-A's laundry, taking L-A to and from school, helping with homework, reading to L-A before she went to sleep, and attending L-A's extracurricular activities. All on a daily basis. After Mother's death, Grandparents still never missed L-A's extracurricular activities. Now, Grandparents also serve as one of L-A's only connections to her deceased Mother. Even though it is not disputed that since Mother's death, Father has spent more time with L-A and developed a closer relationship with her, Grandparents were heavily involved in raising L-A up until that point. Thus, it is reasonable that the trial court would view a more involved visitation schedule as appropriate for this family.

Furthermore, the record indicates that the trial court attempted to follow the visitation schedule that Ellsworth had recommended, and both parties had arguably agreed to previously.[10] Only minor differences can be seen between the schedule recommended by Ellsworth and that ordered by the trial court. For example, during the proceedings Grandmother expressed that she would like to see L-A on her own birthday. The trial court's order reflects this request and grants visitation for four hours on each of the Grandparents' birthdays. The trial court also increased the amount of time L-A would spend with Grandparents on Mother's birthday from four hours to eight hours. In addition, the trial court specified that weekend visitation should fall on Father's on-call weekends, seemingly in an attempt to not impede upon time that Father could be with L-A.

Given the uniqueness that pervades different family units, strict standards on the amount of permissible visitation under the Grandparent Visitation Act would be difficult to craft. As such,

---

[10] We recognize that this recommended schedule was only Ellsworth's preliminary recommendation in order to help L-A transition into the primary care of her Father. It was within the trial court's discretion to determine whether a similar schedule was still in L-A's best interest. Moreover, as discussed in greater detail below, we are also mindful that extensive visitation may not always be in L-A's best interest as she matures and develops a closer relationship with Father.

13

trial courts should be able to consider the various circumstances presented in each individual case to determine what is in the child's best interest.

Moreover, the current order on visitation is not permanent. The Grandparent Visitation Act contemplates that the best interest of the child may change over time. Under Indiana Code § 31-17-5-7, "[t]he court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child." While a more extensive visitation schedule may be warranted when a child is younger and requires greater supervision, as a child matures, his or her increased involvement in academics, extracurricular activities, friends, hobbies, and jobs may warrant a more modest visitation schedule. See e.g. In Re Guardianship of K.T., 743 N.E.2d 348, 352 (Ind. Ct. App. 2001) (after considering variety of individuals that loved child and wanted to be part of her life, in addition to "changed circumstances since the original visitation order was entered," no abuse of discretion when the court "determined that it would be appropriate to reduce [child's] court-ordered visitation with [Grandparents]"). Thus, while the awarded visitation in the present case may be appropriate given L-A's age and the extensive role Grandparents have played in her life, as she becomes more involved in other activities and develops a closer relationship with Father, modification may be warranted.

**Conclusion**

We summarily affirm the Court of Appeals in upholding the award of grandparent visitation. We also hold that the trial court did not abuse its discretion in the amount of visitation that it granted to Grandparents under the Grandparent Visitation Act. Accordingly, the trial court's order on grandparent visitation is affirmed.

Dickson and Massa, J.J., concur.

Rush, C.J., concurs in result only with separate opinion in which Rucker, J., joins.

14

**Rush, J., concurring in result.**

I concur fully with the majority, except as to its analysis of the quantity of visitation awarded—and even on that issue, I concur in result. In <u>K.I.</u>, and again in <u>M.L.B.</u>, we cautioned that the amount of grandparent visitation must be carefully limited so as not to impede parents' fundamental constitutional right to direct their children's upbringing. In my view, the majority's reliance on our usual "deference to trial judges in family law matters" insufficiently protects the parent's constitutional rights and risks allowing excessive awards to escape meaningful appellate review. But even under the closer scrutiny I would apply, the trial court's award of 24 overnights per year, plus short visits weekly and for a few special occasions, does not unduly infringe on Father's parental rights under these circumstances.

The majority rightly recognizes our prior admonitions that "[t]he Grandparent Visitation Act contemplates 'only occasional, temporary visitation'" and that grandparents' statutory right to seek visitation must remain secondary to natural parents' "fundamental constitutional right to direct their children's upbringing without undue governmental interference." Slip op. at 8–9 (quoting <u>K.I.</u>, 903 N.E.2d at 462 and <u>M.L.B.</u>, 983 N.E.2d at 586). I also agree in principle that once the trial court has made the required findings under the Act, its determination of how much visitation is appropriate will depend on each family's unique circumstances. Finally, I agree that under these circumstances, the amount awarded is not excessive. <u>See generally</u> slip op. at 12–13.

My disagreement is only with the majority's reluctance to craft "strict standards on the amount of permissible visitation." Slip op. at 13. In my view, <u>K.I.</u> and <u>M.L.B.</u> have already imposed a very strict standard indeed—though not one that can be quantified as a bright-line number of days or hours—in order to protect the natural parents' constitutional rights as <u>Troxel v. Granville</u>, 530 U.S. 57 (2000), demands. Under that standard, similarity to the Parenting Time Guidelines becomes problematic not when a grandparent's visitation coincides with too many school vacations or family birthdays as the majority suggests, <u>see</u> slip op. at 8 n.6, but when the *overall quantity* becomes excessive—too closely mirroring the amount of time that would ordinarily be reserved for a natural non-custodial parent. The quantity awarded in any particular case is, of course, a discretionary judgment—but the constitutional protections in <u>K.I.</u> and <u>M.L.B.</u> limit that discretion considerably. Accordingly, I find it unhelpful to frame this issue as involving our usual "substantial deference to the trial court's determination of family law matters." Slip op. at 8.

Nevertheless, under these circumstances, the quantity of visitation awarded was well within the constitutional limits articulated in K.I. and reiterated in M.L.B. In grandparent visitation cases, "the parties' earlier pattern . . . suggests an amount of visitation that might be awarded without unduly interfering" with parental rights. M.L.B., 983 N.E.2d at 587. And here, with Father's consent (or at least acquiescence), the grandparents had an extensive, almost parental role with L-A before and during Mother's illness and after her death. In light of that unusually extensive quantity of visitation, and its quasi-parental character, the trial court's total award—24 overnights per year and visits of a few hours roughly once per week—is entirely proportionate. (Even in absolute terms, it is significantly less than the 34 overnights per year held excessive in M.L.B., 983 N.E.2d at 587 (citing Troxel, 530 U.S. at 71)—and a far cry from the 73 overnights per year overturned in Swartz.) Though any court-ordered grandparent visits, even the shorter daytime ones, necessarily impinge on parental rights by intruding into the household schedule, the shorter visits are necessarily a lesser intrusion. And finally, as the majority rightly observes, the trial court thoughtfully set the overnight visits to fall on Father's on-call weekends, thus minimizing intrusion on his own time with L-A. It is apparent that the trial court was attentive to Father's rights in crafting the visitation award, both in its quantity and its schedule.

In my view, then, the analysis here is straightforward. A trial court's first task in grand-parent visitation cases is applying the four "McCune factors"—that is, (1) to presume that as a fit parent, Father's decisions were in L-A's best interests, (2) to therefore give his visitation decisions "special weight," and (3) to give "some weight" to whether Father had agreed to some visitation or denied it entirely; all as part of its ultimate determination of (4) whether court-ordered visitation was in L-A's best interests. M.L.B., 983 N.E.2d at 586. On those questions, I agree the factfinder does indeed have broad discretion because (subject to the presumptions and heightened standard of proof the first three factors entail, see id.) they are ultimately judgments of evidentiary weight and witness credibility. E.g., In re Adoption of O.R., 16 N.E.3d 965, 973 (Ind. 2014) ("[W]e recognize that the trial judge is in the best position to . . . determine witness credibility, get a feel for the family dynamics, and get a sense of the parents and their relationship with their children."). And here, though the evidence was disputed, the trial court's ultimate finding that Father would deny and not merely limit visitation, contrary to L-A's best interests, was well within its discretion.

But then, K.I.'s "occasional, temporary" standard gives trial courts far narrower discretion over the *amount* of grandparent visitation than over the threshold McCune findings. Still, not only

is the amount of visitation awarded here far short of what we've previously found excessive under the K.I. standard, it is further justified by "the parties' earlier pattern" established by the unusually frequent visitation Father permitted before this dispute arose. M.L.B., 983 N.E.2d at 587. Moreover, the award is tailored to minimize the longer visits' intrusion into Father's time with L-A. In my view, no further analysis is necessary to affirm the quantity of visitation awarded in this case—and any further inquiry just adds needless complexity, understates the importance of K.I.'s limitations, and raises confusion about the extent of trial courts' discretion. But because the majority's analysis reaches the same outcome, I respectfully concur in result.

Rucker, J., joins.