## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 06 2016, 8:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Laurie Baiden Bumb
Bumb & Vowels, LLP
Evansville, Indiana

Thomas A. Massey
Massey Law Offices
Evansville, Indiana

ATTORNEYS FOR APPELLEES

Keith W. Vonderahe
Molly E. Briles
Ziemer, Stayman, Weitzel & Shoulders, LLP
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re: the Visitation of L-A.D.W., | July 6, 2016 |
| R.W. | Court of Appeals Case No. 82A01-1512-DR-2235 |
| *Appellant-Respondent,* | Appeal from the Vanderburgh Superior Court |
| v. | The Honorable Mary Margaret Lloyd, Judge |
| M.D. and W.D., | Trial Court Cause No. 82D04-1305-DR-465 |
| *Appellees-Petitioners* | |

**Baker, Judge.**

[1] This case has been here before. The first time, the trial court ordered grandparent visitation between L-A.D.W. (Child) and M.D. and W.D. (collectively, Grandparents) over the objections of Child's father. Ultimately, our Supreme Court affirmed the order. With a pending move to Colorado on the horizon, R.W. (Father) has now asked the trial court to set aside the order requiring grandparent visitation. The trial court declined, though it decreased the amount of visitation required, and also found Father in contempt for failing to abide by its prior orders.

[2] Father now appeals the order refusing to terminate court-ordered grandparent visitation and the order finding him in contempt of court. He contends that there is insufficient evidence supporting continued grandparent visitation and that the contempt finding was unwarranted. Finding sufficient evidence and that the contempt order is not ripe for our review, we affirm.

## Facts

### *The First Appeal*

[3] The underlying facts of this case are as follows:

> From the time of her birth, L–A.D.W. had a close relationship with her maternal grandparents, M.D. and W.D. (Grandparents). Grandparents lived with L–A and her parents, L.A.D. (Mother) and R.W. (Father), beginning when L–A was born. Even after Grandparents returned to their own home, they remained a part of L–A's daily life. In 2010, Mother was diagnosed with stage four cancer, and Grandparents moved back into Mother and Father's home to help care for Mother and L–A. After Mother's three-year battle with cancer and amidst the dissolution of her

marriage, Mother passed away in April 2013. L–A was only eight years old.

In accordance with Mother's wishes as expressed in her will, Grandparents filed for visitation rights with L–A under the Grandparent Visitation Act. Grandparents' and Father's relationship had grown contentious over the course of Mother's illness and her deteriorating marriage. Grandparents feared that Father would totally discontinue any contact between them and L–A. Grandparents believed that court-ordered visitation was the only way to maintain a regular and meaningful relationship with their only grandchild. Conversely, Father wished to control any visitation schedule Grandparents had with L–A.

After a hearing, in which two mental health experts opined on what would be in the best interest of L–A, the trial court determined that it was in L–A's best interest to have a meaningful and ongoing relationship with Grandparents. The trial court ordered a visitation schedule, which followed the visitation schedule that was initially recommended by one of the mental health experts. This schedule was crafted to allow L–A to transition into the primary care of her Father.

*In re Visitation of L-A.D.W.*, 38 N.E.3d 993, 994 (Ind. 2015) (internal citation omitted). Father appealed, and the case eventually made its way to our Supreme Court, which affirmed the trial court's order. Our Supreme Court emphasized the wide discretion that trial courts have in fashioning grandparent visitation orders:

Given the uniqueness that pervades different family units, strict standards on the amount of permissible visitation under the Grandparent Visitation Act would be difficult to craft. As such, trial courts should be able to consider the various circumstances

presented in each individual case to determine what is in the child's best interest.

*Id.* at 1001. Although Grandparents in this case were afforded significant amounts of visitation with Child, our Supreme Court found that the order was reasonable in this case because they had been so involved with Child's life and upbringing. *Id.* at 1000. The Court observed that the visitation was not permanent and was subject to modification as Child gets older and "becomes more involved in other activities and develops a closer relationship with Father[.]" *Id.* at 1001.

### *Post-Appeal Developments*

[4] In 2014, Grandparents filed two petitions in aid of judgment, seeking a court order for Father to comply with the visitation plan as set forth by the trial court. Among other things, Grandparents alleged the following issues:

- Father had failed to provide Grandparents with his on-call schedule or Child's extracurricular activity schedules.
- Father had discussed the ongoing court proceedings with Child.
- Father made scheduling Grandparents' weekends with Child extremely difficult, on one occasion scheduling a family vacation to occur on a grandparent visitation date and failing to inform Grandparents that Child was out of town until Grandparents were already halfway to Evansville from their home in Kentucky.
- Father spoke derogatorily about Grandparents to Child.
- Father sent acrimonious and sarcastic text messages to Grandparents.

On June 18, 2015, Father filed a notice of intent to relocate with Child to Colorado. Grandparents filed a petition to modify grandparent visitation on

June 29, 2015, seeking to ensure that they would still have visitation time with Child after the out-of-state move occurred. The trial court ordered Father to notify Grandparents by August 5, 2015, of the name of the Colorado school Child would attend. On August 10, 2015, Grandparents filed a petition seeking to have Father held in contempt as he had still not provided them with that information. He ultimately provided the information to Grandparents on the day the contempt petition was filed.

[5] On August 13, 2015, the trial court held an evidentiary hearing on all pending motions. At that time, Child was ten years old. At the hearing, Laura Ellsworth, Father's expert witness, testified that Child had grown increasingly frustrated and angry regarding her visitation with Grandparents. Ellsworth acknowledged that Father had continued to discuss the ongoing litigation with Child, and though she had not observed Father attempting to alienate Child from Grandparents, she could not say that it had not taken place. Ellsworth recommended that after the move to Colorado, Father should be permitted to determine what reasonable visitation between Child and Grandparents would be. Before making this recommendation, Ellsworth did not speak with Grandparents or any of Child's teachers or nannies. On November 13, 2015, the trial court entered its order finding and holding, in relevant part, as follows:

> 14. Almost immediately after the [initial grandparent visitation order] was entered, Father failed and/or refused to fully comply with the Judgment.

> ***

18.	During the course of the initial trial, Ellsworth testified that it was "important" for [Child] to continue to have a meaningful relationship with Grandparents, but she believed Father should be able to determine when the grandparent visitation would occur in large part because of Ellsworth's belief that Father had abided by her initial recommendations for transitional grandparent visitation during the summer of 2013.

19.	However, . . . . Father in fact did not abide by Ellsworth's initial recommendations. This fundamental misunderstanding of Ellsworth as to the level of visitation allowed by Father when there was no court order in place significantly impacts the Court's view of Ellsworth's credibility on this issue.

20.	The Court is similarly not convinced that Ellsworth has been given or has ascertained of her own volition all of the relevant information that would seemingly necessarily bear on a determination of [Child's] best interests at the current time.

***

35.	Moreover, although Ellsworth stated that [Child] was not able to participate in peer activities while with the Grandparents, the contradicted evidence established by Grandparents was that [Grandparents] . . . ensured [Child] attended archery practice and competitions, swim practices and competitions, . . . swim team banquet, bible school, and a birthday party for [Child's] friend, all during their scheduled grandparent visitation times. . . .

***

42. Father himself testified . . . that [Child's] relationship with his parents is "normal" while Father characterized [Child's] relationship with Grandparents as "incredibly dysfunctional." The Court finds it highly likely that [Child] has based her current perception on what is a "normal" grandparent relationship on Father's expressed sentiments to this effect and Father's prior statements to [Child] . . . that [Child's] relationship with Grandparents is somehow "weird."

43. When asked during cross-examination at the Hearing, Father was unable to remember [the] last positive thing he had said to [Child] about Grandparents or when he would have last made a positive statement to [Child] about Grandparents.

\*\*\*

45. Ellsworth made several statements during her testimony to the effect that Father has assured [Child] that he knows she does not want to participate in grandparent visitation and that he has reinforced with [Child] that he is "doing everything he can" and is "fighting to get what she wants."

46. These statements are further indication that Father has continued to discuss these proceedings with [Child] and, rather than encouraging [Child] to participate in the grandparent visitation and renew a strengthened relationship with Grandparents, the Father has continued to imply (or state outright) to [Child] that he opposes the grandparent visitation. The Court further finds that Father appears to be pathologically alienating [Child] from Grandparents by making promises to her that he is doing everything in his power to stop the visitation, thus manipulating [Child] into thinking negatively about

Grandparents and grandparent visitation and further poisoning the relationship between Grandparents and [Child].

\*\*\*

50.     . . . Father has made no efforts to seek or enroll [Child] in regular counseling to address the anger she is feeling and help her process her feelings of grief [over the death of her mother].

\*\*\*

61.     . . . [T]his Court is convinced that at least part of Father's motivation in moving from Evansville was to force a de facto reduction to the amount of grandparent visitation to be exercised by Grandparents.

\*\*\*

65.     Father again desires for this Court to issue an order denying court-ordered grandparent visitation and allowing him to make all decisions regarding the frequency of contact between Grandparents and [Child].

\*\*\*

68.     Grandparents still believe that Father will attempt to deny them any contact with [Child] if there is no court-ordered visitation.

69.     In contrast to the dire picture painted by Father and Ellsworth regarding Grandparents' relationship with

[Child], Grandparents both testified they believe their relationship with [Child] is even stronger than it was two (2) years ago.

*** 

75.    The overall amount of grandparent visitation to be exercised by Grandparents under Grandparents' proposal is significantly less than the amount of visitation previously [ordered].

76.    Grandparents are not seeking an order for Father to contribute to any of their travel expenses incurred for grandparent visitation as a result of his move.

77.    . . . Grandparents are not seeking any reimbursement of their attorney fees or any other sanctions to be imposed by the Court at this time other than an admonishment to Father that he must comply with the Court's order.

Appellant's App. p. 12-46 (internal citations omitted). The trial court found that continued visitation with Grandparents is in Child's best interests and set forth a schedule to be followed by all parties. The trial court ordered that Grandparents would have Child for twenty-one overnights annually, with a specific schedule set forth for the next year. The trial court also found Father in contempt for his failure to timely provide Grandparents with the name of the Colorado school Child would be attending. Although Grandparents did not seek a sanction, the trial court found "that this incident is simply one of many in which Father willfully refused or failed to comply with the Court's orders." Appellant's App. p. 44. The trial court imposed a fine of $2,500 but stayed

payment of the fine and found that Father could purge himself of the contempt finding by complying with all orders in this matter. Father now appeals.

# Discussion and Decision

# I. Grandparent Visitation Order

Father raises multiple arguments with respect to the grandparent visitation order. We reframe and restate them as follows: (1) there is insufficient evidence supporting the trial court's conclusion that continued court-ordered visitation with Grandparents is in Child's best interests; and (2) the amount of visitation ordered by the trial court exceeds the occasional, temporary visitation contemplated by the Grandparent Visitation Act. Ind. Code § 31-17-5-1 *et seq.*

Under the Grandparent Visitation Act, the amount of visitation is left to the trial court's sound discretion. *L-A.D.W.*, 38 N.E.3d at 997. We conduct our review with a "preference for granting latitude and deference to our trial judges in family law matters." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). In conducting our review, we must first determine whether the evidence supports the findings, and second, whether the findings support the judgment. *In re Visitation of M.L.B.*, 983 N.E.2d 583, 585 (Ind. 2013). We will neither reweigh the evidence nor assess witness credibility. *Id.*

While grandparents are afforded certain rights under the Grandparent Visitation Act, those rights do not equate to the constitutional liberty interests held by parents in the upbringing of their children. *L-A.D.W.*, 38 N.E.3d at 998. Nevertheless, our General Assembly, in enacting the Grandparent Visitation

Act, recognized that "'a child's best interest is often served by developing and maintaining contact with his or her grandparents.'" *In re K.I.*, 903 N.E.2d 453, 462 (Ind. 2009) (quoting *Swartz v. Swartz*, 720 N.E.2d 1219, 1221 (Ind. Ct. App. 1999)).

## A. Sufficient Evidence

[9] Grandparent visitation orders may be modified "whenever modification would serve the best interests of the child." I.C. § 31-17-5-7. Generally, there are four factors that must be addressed by a trial court when ruling on a request for grandparent visitation. *In re Adoption of A.A.*, 48A02-1505-AD-328, *6 (Ind. Ct. App. Feb. 19, 2016), *trans. pending*. But when, as here, the order being appealed is an order on a petition to *modify* a grandparent visitation order, the same findings need not be made. *Id.* at *6-*7. This Court has held that the party seeking to modify the grandparent visitation order bears the burden of demonstrating that modification would serve the children's best interests. *Id.* at *7.

[10] In this case, while Grandparents filed a petition to modify their visitation schedule given Father's planned move to Colorado, Father also seeks to modify the order by ending the court-ordered grandparent visitation altogether. Given that he is appealing the trial court's refusal to grant that request, we will consider Father to be the petitioner. He, therefore, bears the burden of demonstrating that a cessation of court-ordered grandparent visitation is in Child's best interests.

[11] The first time this litigation wound its way through the courts of this State, it was definitively established that it is in Child's best interests to have regular visitation with Grandparents. So the questions become, (1) what has changed since the first grandparent visitation order was entered, and (2) do those changes, if any, establish that a cessation of court-ordered visitation is in Child's best interests?

[12] As for what has changed, the inevitable passage of time must top the list. Child has gotten older and expanded her interests, activities, and social circle. She is becoming, perhaps, less content to spend some of her free time with Grandparents. Additionally, Child has begun to feel negatively about her relationship with Grandparents, expressing anger and frustration that it is not a more "normal" grandparent relationship.

[13] The trial court, however, noted that the Grandparents have always made an effort to enable Child to participate in all scheduled extracurricular and social activities when she is with them during their visitation time. Furthermore, to the extent that Child has begun to feel negatively about her relationship with Grandparents, the trial court found that the negative feelings stem from Father's own inappropriate conduct. Specifically, Father has continued to disobey court orders by discussing the court proceedings with Child, has commented about how her relationship with her paternal grandparents is "normal" but her relationship with Grandparents is not, and has said that he is doing everything he can to end the court-ordered visitation time. We agree with Grandparents that "Father should not be able to foster hostility toward Grandparents and

then, when his alienation has been successful, to be able to completely terminate [Child's] relationship with them." Appellees' Br. p. 32.

[14] Grandparents testified that, in contrast to evidence presented by Father, their relationship with Child is even stronger at this point than it was two years earlier. Tr. p. 181-82, 200, 210-11. The trial court elected to credit Grandparents' testimony over Father's, a determination of both credibility and weight that we will not second-guess. Similarly, the trial court explicitly found that Father's expert was not credible, and as we may not assess witness credibility on appeal, we will not second-guess that determination either. We note, however, that Father's own expert testified that she would not recommend that Child not see Grandparents for extended periods of time— which is, essentially, precisely what Father planned to implement absent court-ordered visitation. *Id.* at 67, 125. In the end, Father asks us to reweigh the evidence and re-assess witness credibility—an invitation we decline. We find that the evidence in the record supports the trial court's decision to continue court-ordered grandparent visitation in this case, albeit with a modified schedule necessitated by Father's move to Colorado.

## B. Occasional and Temporary

[15] Next, Father argues that even if continued court-ordered grandparent visitation is warranted, the amount ordered by the trial court in this case is excessive. In the first appeal of this case, our Supreme Court found that weekly visits on Tuesdays and twenty-three overnights per year fell within the meaning of

"occasional, temporary visitation" as contemplated by the Grandparent Visitation Act for this family. *L-A.D.W.*, 38 N.E.3d at 1001. As modified, Grandparents are now entitled to twenty-one overnights per year, primarily during Child's breaks from school. This is far less than the amount already approved by our Supreme Court in this case.

[16] Father's primary complaint about the new schedule is that he does not have sufficient notice of Child's school, extracurricular, and social activities a year in advance to be able to schedule the grandparent visitation around those obligations. Additionally, he complains that the grandparent visitation schedule restricts his ability to schedule family vacations or trips. But we agree with Grandparents that a set schedule—the trial court's order sets forth the dates of each grandparent visit for the next year—should actually provide Father with a greater ability to plan vacations with Child as he already knows what dates are and are not available. And to the extent Child may have extracurricular activities occurring during grandparent visitation time, we note again that Grandparents have always facilitated those activities and there is no reason to believe that they will not continue to do so. We find that the amount of grandparent visitation ordered after the trial court modified the schedule is within the meaning of occasional, temporary visitation contemplated by the Grandparent Visitation Act. Given the wide latitude we give to trial judges to fashion remedies in family law cases, we decline to set aside the schedule created by the trial court in this case.

# II. Contempt Order

[17] Father also argues that the trial court erred by finding him in contempt and sanctioning him for failing to provide Grandparents with information about Child's new school in Colorado in a timely fashion. But the trial court stayed the fine pending Father's compliance with the order. Generally, "there is no appealable final judgment in contempt cases until the court has proceeded to attach and punish the defendant by fine or imprisonment." *Bayless v. Bayless*, 580 N.E.2d 962, 964 (Ind. Ct. App. 1991). As there is no appealable final judgment at this time related to the contempt finding, the issue is not ripe for our review and we decline to consider it.[1]

[18] The judgment of the trial court is affirmed.

May, J., and Brown, J., concur.

---

[1] We note that Father may very easily purge himself of the contempt finding and the fine by doing that which he should have done all along—comply with the trial court's orders.