## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 02 2019, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Emily S. Waddle
DeMotte, Indiana

ATTORNEY FOR APPELLEE

Thomas J. O'Brien
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Paternity of L.C. and C.C. (Minor Children):

Nichole Wells,

*Appellant-Petitioner,*

v.

Joshua Christman,

*Respondent,*

Deborah Christman,

*Appellee-Intervenor.*

May 2, 2019

Court of Appeals Case No.
18A-JP-2923

Appeal from the Jasper Circuit Court

The Honorable John D. Potter, Judge

Trial Court Cause No.
37C01-1501-JP-25

**Bailey, Judge.**

# Case Summary

[1] L.C. and C.C. (collectively, the "Children") are minor children born to Nichole Wells ("Mother") and Joshua Christman ("Father"). After Father died, his mother Deborah Christman ("Grandmother") successfully petitioned for grandparent visitation rights. Mother now appeals from the order granting those rights. She presents several issues, which we consolidate and restate as whether the trial court erred in granting visitation rights to Grandmother.

[2] We affirm.

# Facts and Procedural History

[3] Mother and Father had two daughters, L.C. (born in 2010) and C.C. (born in 2013). While Mother and Father were in a relationship, Grandmother regularly spent time with the Children. In 2014, the relationship between Mother and Father deteriorated, and Mother eventually received primary physical custody of the Children. Father had weekly parenting time, and Grandmother would help by transporting the Children between residences.

[4] Father died in August 2015, which led to Grandmother having little contact with the Children. Grandmother later petitioned for visitation rights. The trial court held a hearing and ultimately granted visitation rights to Grandmother.

[5] Mother now appeals.

# Discussion and Decision

[6] When ruling on a petition for grandparent visitation rights, the court must enter findings and conclusions in accordance with Trial Rule 52. *See* Ind. Code § 31-17-5-6; Ind. Trial Rule 52(A). We conduct a two-tiered review of those findings, first determining "whether the evidence supports the findings and then whether [the] findings support the judgment." *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009). In conducting our review, we do not reweigh the evidence, *Stonger v. Sorrell*, 776 N.E.2d 353, 358 (Ind. 2002), and must give "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses," T.R. 52(A). We "shall not set aside the findings or judgment unless clearly erroneous." *Id.* Findings are clearly erroneous when the record contains no facts to support them, either directly or by inference. *Fischer v. Heymann*, 12 N.E.3d 867, 870 (Ind. 2014). "A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment." *J.H.*, 903 N.E.2d at 457. A judgment is also clearly erroneous when the court "applies the wrong legal standard to properly found facts." *Id.*

[7] "Indiana has enacted legislation . . . recogniz[ing] that 'a child's best interest is often served by developing and maintaining contact with his or her grandparents.'" *In re Visitation of L-A.D.W.*, 38 N.E.3d 993, 997 (Ind. 2015) (quoting *J.H.*, 903 N.E.2d at 462). Indeed, Indiana Code Section 31-17-5-1 gives grandparents like Grandmother—whose own child is deceased—the right to seek visitation. Moreover, a court may grant visitation if it "determines that visitation rights are in the best interests of the child." I.C. § 31-17-5-2(a).

Notably, however, natural parents have a "fundamental constitutional right to direct their children's upbringing without undue governmental interference." *In re Visitation of M.L.B.*, 983 N.E.2d 583, 586 (Ind. 2013) (discussing *Troxel v. Granville*, 530 U.S. 57 (2000) (plurality opinion)). Thus, to "strik[e] a balance" between the interests of parents and children, visitation orders must address:

(1) a presumption that a fit parent's decision about grandparent visitation is in the child's best interests (thus placing the burden of proof on the petitioning grandparents);

(2) the "special weight" that must therefore be given to a fit parent's decision regarding nonparental visitation (thus establishing a heightened standard of proof by which a grandparent must rebut the presumption);

(3) "some weight" given to whether a parent has agreed to some visitation or denied it entirely (since a denial means the very existence of a child-grandparent relationship is at stake, while the question otherwise is merely how much visitation is appropriate); and

(4) whether the petitioning grandparent has established that visitation is in the child's best interests.

*Id.* (emphasis removed) (citing *McCune v. Frey*, 783 N.E.2d 752, 757-59 (Ind. Ct. App. 2003)); *J.H.*, 903 N.E.2d at 462.

[8] Here, the trial court found that "Grandmother has had a close and bonding relationship" with the Children, App Vol. II at 82, including "substantial and meaningful contact" with them before Father died, *id.* at 83. The court also

found that Father's death "greatly affected" Mother and Grandmother "to such an extent that they have shown animosity towards one another which appeared during the testimony in Court." *Id.* at 82. The court found that "Grandmother has had very little contact with [the Children] since her son passed away" and that "Grandmother has attempted to maintain a relationship." *Id.* The court acknowledged that Mother had reasons for denying visitation, in that "she believes allowing Grandmother visitation with her children would cause [the Children] mental harm and she wanted the [C]hildren to be old enough to decide for themselves about Grandmother." *Id.* The court also addressed evidence that Mother permits the Children to spend time with their paternal uncle—Grandmother's son. The court found that although Mother "claims that she is not actively trying to exclude Father's family from the [C]hildren's lives . . . the paternal uncle is estranged from his mother, the Grandmother." *Id.* at 83. The court further noted that it had appointed a Guardian Ad Litem (the "GAL"), and that the GAL's "report and testimony indicate[] that it would be in the best interest of the [C]hildren that Grandmother have visitation." *Id.*

[9] The court ultimately recited the four factors, then found as follows:

> In this case, Mother is a fit parent and has been denying visitation to the paternal Grandmother. Many unresolved issues remain surrounding the death of the common connection between Mother and Grandmother—the [C]hildren's father. Mother has unresolved issues teeming with animosity with paternal Grandmother that appear to be the primary reason for her denial of visitation. The [C]hildren miss their grandparent and substantial evidence, including the Guardian Ad Litem

Report, indicates that visitation with Grandmother would be in the best interests of the [C]hildren.

*Id.* at 83.

[10] Mother argues that the trial court erred in several respects. Her arguments generally focus on whether the trial court erred by either failing to apply or improperly applying each of the four factors. Mother also asserts that Grandmother did not meet her burden of proof as the petitioner, and that the "judgment was not supported by the findings of fact." Appellant's Br. at 12.[1]

[11] Yet, the trial court found that Mother was a fit parent and it gave careful attention to Mother's reasons for denying the relationship—thereby addressing the first and second factors. As to the third factor, the trial court found that although Mother allowed the Children to have a relationship with a paternal uncle, Mother was denying the Children a relationship with Grandmother.

[12] Mother mainly focuses on the fourth factor—whether Grandmother established that visitation was in the Children's best interests. Mother argues that Grandmother "presented no evidence" that would support a best-interests

---

[1] Mother presents an argumentative Statement of the Facts, contrary to Appellate Rule 46(A)(6)(b), which provides that "[t]he facts shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed." Moreover, her Argument section contains sparse citation, contrary to Appellate Rule 46(A)(8)(a), which provides that "[e]ach contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on, in accordance with Rule 22." We remind counsel that non-compliance with Appellate Rule 46 can result in waiver of appellate issues. *See, e.g.*, *Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015). We nevertheless address Mother's appellate contentions. *See id.* (noting a preference to resolve cases on the merits instead of on procedural grounds).

determination. Appellant's Br. at 12. Indeed, Mother asserts that attention to the Children's best interests "was wholly absent [from] . . . Grandmother's case in chief." *Id.* at 15. Yet, Grandmother testified that, in her belief, it was in the Children's best interests to maintain a relationship with her. Grandmother testified about her close relationship with the Children before Father died, including how she would watch them when Mother and Father "need[ed] to go somewhere or wanted to go out." Tr. Vol. II at 5-6. Grandmother recalled taking the Children places, including the pumpkin patch, the zoo, and the mall. Grandmother also testified about how she would attend school events.

[13] Largely disregarding this testimony, Mother suggests that Grandmother was obligated to place "Mother in an[] unpleasant or unacceptable light" in order to prevail on the petition. Appellant's Br. at 13. However, Mother cites no authority for this proposition. Mother also focuses on evidence least favorable to Grandmother. Indeed, at one point, Mother asserts that the Children should not be "exposed to Grandmother's negativity," *id.* at 14, and that the court "should have placed more weight" on certain evidence, *id.* at 15. Mother also suggests that "no testimony was given . . . to bolster Grandmother's position." *Id.* Yet, these arguments amount to requests to reweigh the evidence—and we must decline them. Nevertheless, as to Mother's assertion that the record was devoid of additional evidence that visitation was in the Children's best interests,

the GAL testified that the Children were "excited" to have a relationship with Grandmother. Tr. Vol. II at 37. Moreover, the GAL recommended visitation.[2]

[14] Mother also directs us to *In re Visitation of C.S.N.*, 14 N.E.3d 753 (Ind. Ct. App. 2014), where this Court reversed an order granting visitation rights. There, the written findings indicated that the court had improperly shifted the burden to the parent. *See id.* at 759. The court also erroneously found that the parent had been completely denying visitation. *See id.* at 762 (identifying a "significant difference in situations where a grandparent's visitation has been merely reduced versus denied entirely"). Thus, that case involved error in applying certain factors. Here, however, Mother fails to identify any such error.

[15] Ultimately, although Mother focuses on her fundamental right to direct the Children's upbringing, Indiana law permits some interference with that right, preserving grandparent relationships for children who have lost a parent. In determining that visitation was in the best interests of the Children, the court properly addressed each of the four factors. Moreover, Mother has not identified error in the findings—and those findings support the decision to grant

---

[2] To the extent Mother is suggesting that the trial court failed to give appropriate deference to Mother's decision to deny visitation, "it is the trial court's prerogative to listen to the evidence and determine, in light of that evidence, whether a parent's alleged justification for denying or restricting visitation with grandparents holds water." *Spaulding v. Williams*, 793 N.E.2d 252, 260 (Ind. Ct. App. 2003). Here, the trial court properly acknowledged and considered Mother's explanation, but ultimately determined that animosity was the primary motivator for denying visitation—not the proffered concerns about Grandmother's care.

visitation rights to Grandmother. We therefore conclude that Mother has not demonstrated that the trial court clearly erred in granting visitation rights.

[16] Affirmed.

Riley, J., and Pyle, J., concur.