## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 31 2017, 9:07 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Heidi K. Koeneman
Beckman Lawson, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Randall J. Hammond
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Andrea Simon and Jimmie Busbee, *Appellants-Intervenors,* v. Amanda Lynn Busbee, *Appellee-Petitioner,* and Levi A. Fuller, *Appellee-Respondent.* | July 31, 2017 Court of Appeals Case No. 02A03-1612-JP-02811 Appeal from the Allen Superior Court The Honorable Daniel G. Heath, Judge The Honorable Daniel G. Pappas, Magistrate Trial Court Cause No. 02D07-1206-JP-000348 |

**Najam, Judge.**

## Statement of the Case

Andrea Simon and Jimmie Busbee (collectively, "Grandparents") appeal the trial court's denial, following a bench trial, of their petitions for child custody and grandparent visitation. They raise three issues, which we restate as follows:

1. Whether the trial court committed clear error when it denied Grandparent's Petition to Modify Custody.

2. Whether the trial court committed clear error when it denied Grandparent's Petition for Grandparent Visitation.

3. Whether the trial court abused its discretion when it ordered Grandparents to pay Amanda Lynn Busbee's ("Mother") attorney's fees without an evidentiary hearing.

We affirm.

## Facts and Procedural History

Minor child, A.B., was born on June 7, 2012, to Mother and Levi Fuller ("Father").[1] Mother filed a petition to establish paternity and support on June 26, 2012. On August 6, the trial court entered an order establishing paternity and awarded sole legal custody to Mother and parenting time to Father.

Although Mother had obtained a four-year degree in criminal justice from Indiana Tech, she worked as a waitress and/or bartender after A.B. was born,

---

[1] Father did not seek custody of A.B. and does not participate in this appeal.

until approximately September 2015. During that time, Mother and A.B. lived together but Mother relied on Grandparents to provide work-related child care for A.B. Because Mother's jobs required her to work late hours—often until 1:00 or 2:00 a.m.—A.B. frequently spent the night at Grandparents' home. Grandparents frequently encouraged Mother to allow A.B. to spend the night with them.

[5] Grandparents had never been married but had been in a relationship for approximately thirty-two years. They owned a tobacco retail store in Fort Wayne at which they sold, among other things, various tobacco products, smoking devices, and sex toys. Grandparents were not salaried employees of the store, but received all net proceeds from the sales of the business, totaling approximately $60,000-$70,000 per year. During the day, Jimmie Busbee ("Grandfather") was primarily responsible for providing child care for A.B., although the Grandparents sometimes took A.B. with them to their store. When A.B. spent the night with Grandparents, she slept with Grandfather in his bed.

[6] On September 25, 2014, Mother married Shane Ortega, who is employed with Jack Cooper Transport and earns approximately $60,000-$70,000 per year. Mother and Ortega had a child together, S.O., who was born on July 4, 2015. Ortega also has two minor daughters from a previous marriage, and he has joint legal custody of them and parenting time with them every other weekend. After marrying Ortega, Mother began working only two nights per week. However, by August 2016, Mother had ceased working and stayed at home

with the children full-time. Mother and Ortega shared a three-bedroom home with A.B., S.O., and Ortega's two minor children.

[7] Even after Mother ceased employment, she still permitted A.B. to have liberal visitation with Grandparents. However, Mother became concerned that the Grandparents were not respecting her wishes regarding A.B. Grandparents did not always bring A.B. home to Mother when asked, and they were sometimes not at their home with A.B. when Mother tried to pick A.B. up from them. Mother asked Grandparents to cease taking A.B. to their store, which Mother believed was inappropriate because of the items sold there, but Grandparents did not honor that request. Grandparents enrolled A.B. in a school without Mother's consent, and Grandfather continued to visit A.B. at school even after Mother told him not to do so.

[8] Grandfather disliked Ortega, and the two men engaged in a physical fight at A.B.'s birthday party at Mother and Ortega's house on June 8, 2015. The fight led to an investigation by the Allen County Department of Child Services ("DCS"), which concluded that Mother's home was safe and proper and the allegation of neglect was unsubstantiated. On September 23, 2015, Grandparents contacted DCS regarding an alleged bruise on A.B.'s buttock. DCS investigated that same day and found no cause to initiate an action concerning abuse or neglect by Mother or Ortega. However, Grandfather contacted DCS again on September 25 and reported that he felt A.B. was unsafe around Ortega. Grandfather admitted to DCS that Grandfather visited A.B. at her school without Mother's permission. On September 29,

Grandfather again reported to DCS that he had visited A.B. at her school without Mother's consent because Mother had told Grandfather she was going to move A.B. to another school if Grandfather kept visiting A.B. at school. Around the end of September, Mother ceased allowing Grandparents to visit with A.B. DCS completed its investigation in mid-October and concluded that the allegations of abuse and/or neglect of A.B. were unsubstantiated.

On October 13, 2015, Grandparents filed a motion to intervene in the paternity action involving A.B. and an emergency petition to modify custody of A.B. The trial court granted the motion to intervene but found no emergency relating to custody. Grandparents then filed a petition for grandparent visitation, seeking a visitation order as to A.B. in the alternative to a modified custody order. The trial court held a four-day hearing on the Grandparents' petitions and, on November 14, 2016, it denied those petitions. The magistrate judge issued detailed findings and recommendations, which the judge approved. In addition to denying Grandparents' petitions, the trial court also ordered Grandparents to pay Mother's attorney's fees. This appeal ensued.

## Discussion and Decision

### Issue One: Modification of Custody

Grandparents appeal the trial court's findings denying their petition to modify custody of A.B. from her natural mother to them.

> A party challenging a trial court's findings in this regard will not
> succeed unless the order is clearly erroneous "and due regard
> shall be given to the opportunity of the trial court to judge the

credibility of the witnesses." Ind. Trial Rule 52. A judgment is clearly erroneous when it relies on an incorrect legal standard. *Shell Oil Co. v. Meyer*, 705 N.E.2d 962, 972 (Ind. 1998). "We disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment." *Yoon v. Yoon*, 711 N.E.2d 1265, 1268 (Ind. 1999). We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Id*.

*T.H. v. R.J.*, 23 N.E.3d 776, 784 (Ind. Ct. App. 2014), *trans. denied*.

[11] As the trial court correctly noted, we presume that a parent, rather than a nonparent, should have custody of his or her child. *See, e.g., Francis v. Francis,* 759 N.E.2d 1106, 1113 (Ind. Ct. App. 2001), *trans. denied*. This presumption is consistent with a parent's constitutionally protected fundamental right to raise his or her children. *Troxel v. Granville*, 530 U.S. 57, 73 (2000). The nonparent has the burden of overcoming that presumption by clear and convincing evidence of "a parent's present unfitness, or past abandonment of the child such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child." *Froelich v. Clark* (*In re L.L.*), 745 N.E.2d 222, 230-31 (Ind. Ct. App. 2001), *trans. denied*. A general finding that it would be in the child's "best interests" to be placed with a nonparent is not sufficient to rebut the presumption. *Id*. at 231. Rather, only *after* the nonparent rebuts the presumption in the parent's favor by clear and convincing evidence will the court move on to an analysis of whether a modification of custody would be in

the child's best interests and a consideration of the Grandparent's status as de facto custodians,[2] if applicable. *T.H.*, 23 N.E.3d at 786.

[12] Here, Grandparents failed to rebut the presumption that Mother's custody of A.B. is in the child's best interests. The evidence supported the trial court's findings that Mother is a fit parent. The evidence established that A.B. has a good relationship with Mother, Ortega, and her siblings and step-siblings. Mother and her husband have a safe and appropriate home for A.B., and Grandparents failed to show otherwise. In fact, despite Grandparents' repeated complaints to DCS and DCS's related investigations, DCS found each time that Mother and her home were appropriate.

[13] Grandparents also failed to prove by clear and convincing evidence that Mother had abandoned A.B. or acquiesced to Grandparents' custody of A.B. such that A.B.'s and Grandparents' affections had "become so interwoven that to sever them would seriously mar and endanger" A.B.'s future happiness. *In re L.L.*, 745 N.E.2d at 231. While it was undisputed that A.B. spent a significant amount of time with Grandparents from June 2012 to September 2015, the trial court found that the reason for that was Mother's work schedule. Specifically, the evidence established that Grandparents provided child care to A.B. while Mother worked, often late at night. The trial court found that it would have been unreasonable for Mother to retrieve A.B. from Grandparents' home after

---

[2] Grandparents alleged they were the de facto custodians of A.B. pursuant to Indiana Code Sections 31-14-13-2.5(b) and 31-17-2-8.5(b).

she worked late at night, rather than allowing A.B. to spend the night with Grandparents. Moreover, the evidence established that "Grandparents were willing and able to watch [A.B.] while Mother worked, so the arrangement benefited Mother financially by not having to hire daycare, plus it allowed her to earn an income which permitted her to rent her own apartment for a period of time, and it benefited [G]randparents because they were willing, able and content to have [A.B.] in their care." Appellant's App. at 20. Thus, the trial court found that Mother's acquiescence to A.B. spending so much time with Grandparents was for the mutual convenience of Mother and Grandparents. *Id*. at 17. And the trial court was "convinced that Mother [was] truthful" when she testified that "it was never her intent to allow [G]randparents to have custody of [A.B.]." *Id*. at 20.

[14] The trial court did not commit clear error when it denied the petition to modify custody because Grandparents had not overcome by clear and convincing evidence the presumption "that [A.B.'s] best interests [were] best served by placement with . . . Mother." *Id*. at 17. Grandparents' contentions to the contrary are simply requests that we reweigh the evidence, which we will not do. Further, because Grandparents failed to overcome the presumption in Mother's favor, we need not address A.B.'s best interests any further, nor do we address the de facto custodian statutory factors. *T.H.*, 23 N.E.3d at 786.

### Issue Two: Grandparent Visitation

[15] In the alternative to custody, Grandparents sought visitation pursuant to Indiana Code Sections 31-17-5-1 through 31-17-5-10, the Grandparent

Visitation Act, which authorizes grandparent visitation when a court finds such to be in the best interests of the child. The trial court supported its order denying grandparent visitation with specific findings of fact and conclusions thereon. Therefore, as with the custody order, we apply our well-established two-tiered Indiana Rule 52 standard of review:

> [F]irst, we consider whether the evidence supports the trial court's findings; second, we determine whether the findings support the judgment. We shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. We will find clear error if there is no evidence supporting the findings or the findings fail to support the judgment, or if the trial court applies the wrong legal standard to properly found facts.

*F.M. v. K.F.* (*In re K.M.*), 42 N.E.3d 572, 576 (Ind. Ct. App. 2015) (citations and quotations omitted).

[16] In proceeding under the Grandparent Visitation Act, the trial court must address the following four factors:

> (1) a presumption that a fit parent's decision about grandparent visitation is in the child's best interests (thus placing the burden of proof on the petitioning grandparents);

> (2) the "special weight" that must therefore be given to a fit parent's decision regarding nonparental visitation (thus establishing a heightened standard of proof by which a grandparent must rebut the presumption);

(3) "some weight" given to whether a parent has agreed to some visitation or denied it entirely (since a denial means the very existence of a child-grandparent relationship is at stake, while the question otherwise is merely how much visitation is appropriate); and

(4) whether the petitioning grandparent has established that visitation is in the child's best interests.

*K.J.R. v. M.A.B.* (*In re M.L.B.*), 983 N.E.2d 583, 586 (Ind. 2013) (quotation and citation omitted).

[17] Here, Grandparents contend that the trial court placed too much emphasis on the discord between Grandparents and Mother and failed to properly consider that Mother had "completely denied" them visitation since approximately September 2015.[3] Appellant's Br. at 23. We disagree. Conflict between the parent and nonparent is an appropriate consideration when determining whether grandparent visitation is in a child's best interests. *See e.g.*, *Daugherty v. Ritter*, 646 N.E.2d 66, 68 (Ind. Ct. App. 1995) ("Because the court had before it evidence of extensive family conflict, it could have reasonably concluded that it was not in [child's] best interest for the Daughertys to exercise visitation with her."), *adopted*, 652 N.E.2d 502 (Ind. 1995).

---

[3] Grandparents' additional contention that the trial court "ignored" their strong bond with A.B. is without merit as the court repeatedly referred to that strong relationship throughout its order. *See, e.g.*, Appellant's App. at 17 ("No party disputes that a strong emotional bond formed between [A.B.] and grandparents during the first three years of the child's life.").

[18] Moreover, it is clear that the trial court did consider the amount of visitation Mother wished to provide the Grandparents. The trial court found that Mother is a fit parent and that she had discontinued grandparent visitation because Grandparents "may not be willing to comply with reasonable restrictions placed upon them by Mother with regard to any interaction they may have with [A.B.]." Appellant's App. at 23. These findings are supported by the evidence. When Mother had granted Grandparents visitation in the past, Grandparents did not always allow Mother to take A.B. back from them when she wished to do so. Grandparents also refused to cease taking A.B. to their store as Mother had requested due to what she considered to be inappropriate items sold in the store. Grandparents enrolled A.B. in a school without Mother's consent, and Grandfather continued to visit A.B. at school even after Mother told him not to do so. Grandfather fought with Ortega and made repeated complaints to DCS about Mother and/or Ortega, even after DCS investigated and found neglect allegations were unsubstantiated. Yet, despite Grandparents' lack of cooperation with her, Mother testified that she was, in fact, willing to grant Grandparents some visitation with A.B. in the future, but only if they would "respect the decision that [she] ma[d]e and the guidelines that can be set down" by her. Tr. Vol. III at 177.

[19] The above evidence supported the trial court's findings that:

> [t]he wounds created by the decisions of the parties herein need time to mend; the Court's forcing a grandparent visitation schedule upon the parties at this time will not improve their relationships, and may only further damage said relationships.

> The Court finds that grandparents have not rebutted the presumption that the decision made by Mother to limit or deny their visitation with [A.B.] was made in [A.B.'s] best interest[s]. Grandparents have not demonstrated that court-ordered visitation is in [A.B.'s] best interest. The Court finds that it is contrary to the best interests of [A.B.] to grant grandparent's petition for grandparent visitation.

Appellant's App. at 23. The trial court did not commit clear error when it held that Grandparents failed to rebut the presumption that Mother's visitation decision was in A.B.'s best interests and therefore denied their petition for visitation. Again, Grandparents' contentions otherwise merely request that we reweigh the evidence, which we will not do.

### Issue Three: Attorney's Fees

[20]  Grandparents challenge the trial court's order requiring them to pay Mother's attorney's fees in the amount of $21,664.46. We review a decision to award attorney's fees for an abuse of discretion. *Montgomery v. Montgomery*, 59 N.E.3d 343, 354 (Ind. Ct. App. 2016), *trans. denied*. An abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Allen v. Proksch*, 832 N.E.2d 1080, 1102 (Ind. Ct. App. 2005). Indiana follows the American Rule, which ordinarily requires each party to pay his or her own attorney's fees. *Id.* "Generally, attorney's fees are not recoverable from the opposing party as costs, damages, or otherwise, in the absence of an agreement between the parties, statutory authority, or [a] rule to the contrary." *Id.*

[21] Initially, we note that there appears to be some confusion among the parties as to the statutory basis for the trial court's attorney fee order. The trial court stated that it awarded Mother the attorney's fees she incurred "in defending [the] action brought by [Grandparents]." Appellant's App. at 23-24. The action the Grandparents brought was a petition to modify custody of A.B. pursuant to Indiana Code Section 31-17-2-1 through 31-17-2-26. Indiana Code Section 31-17-7-1 allows a trial court to award reasonable attorney's fees to a party maintaining or defending a custody action. Thus, because the trial court did not award attorney fees under the General Recovery Rule, it was unnecessary for the court to find that Grandparents' claim was frivolous, unreasonable, groundless, or litigated in bad faith. Indiana Code Section 34-52-1-1. Moreover, Mother is incorrect when she contends that custody actions under Article 17 are only commenced through divorce or child support matters. Appellee's Br. at 16-17. Rather, Indiana Code Section 31-17-2-3(2) specifically states that a "child custody proceeding" may be commenced under Article 17 by "a person other than a parent." Therefore, fees can be awarded under Article 17 in nonparent custody actions such as this one.

[22] Both parties in this case requested an award of their attorney fees. In order to award attorney fees pursuant to Indiana Code Section 31-17-1-1, "a trial court must consider the parties' resources, their economic condition, their ability to engage in gainful employment and earn adequate income, and any other factors bearing on the reasonableness of the award." *Montgomery*, 59 N.E.3d at 354. When a trial court "fail[s] to hold an evidentiary hearing in order to consider

these issues, [it] abuse[s] its discretion." *Allen*, 832 N.E.2d at 1103, citing *Bertholet v. Bertholet*, 725 N.E.2d 487 (Ind. Ct. App. 2000) and *Barnett v. Barnett*, 447 N.E.2d 1172 (Ind. Ct. App. 1984).

[23] Here, the trial court did hold such an evidentiary hearing. During the course of the hearing, the parties presented evidence of their average annual earnings from employment, their income from other sources, their debts and the composition of their households. The evidence showed that Grandparents' average annual employment earnings were $60,000-$70,000, and Mother's and Ortega's combined annual employment earnings were also in that range.[4] Tr. Vol. II at 123; Tr. Vol. III at 50-51. Grandmother and Mother also each had student loan debts of similar amounts. Tr. Vol. II at 208; Tr. Vol. III at 127. However, Grandfather had civil judgments in his favor totaling approximately $18,000. Tr. Vol. II at 126, 139. Moreover, unlike Grandparents, Mother and Ortega had children in their household for whom they were financially responsible. Tr. Vol. III at 49-50, 152-53. Given the evidence of the parties' respective economic circumstances, the trial court did not abuse its discretion when it ordered Grandparents to pay Mother's attorney fees incurred in defending against their petition to modify custody.

---

[4] We disregard Mother's assertion that it is "inappropriate" to consider the income of Mother's husband, with whom she lives, because he "is not a party to this action," Appellee's Br. at 16, since she cites no supporting authority. Ind. Appellate Rule 46(A)(8) and (B).

## *Conclusion*

The trial court did not commit clear error when it denied Grandparents' petitions to modify custody and for visitation, nor did it abuse its discretion when it awarded Mother her attorney's fees.

Affirmed.

Kirsch, J., and Brown, J., concur.